**In re the CELOTEX CORPORATION and Carey Canada Inc., Debtors.**

Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 6, 1996.

Jeffrey W. Warren, H. Bradley Staggs, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, Stephen A. Madva, Baldo M. Carnecchia, Jr., Natalie D. Ramsey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Debtors.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for Trade Creditors Committee.

Richard A. Nielsen, Salem, Saxon & Nielsen, Tampa, FL, James L. Patton, Jr., David W. O'Connor, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Legal Representative.

Sheldon S. Toll, Honigman Miller Schwartz & Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE MODIFIED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE FOR THE CELOTEX CORPORATION AND CAREY CANADA INC.*

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

The Celotex Corporation ("Celotex"), Carey Canada Inc. ("Carey Canada"), the Legal Representative for Unknown Asbestos Bodily Injury Claimants (the "Legal Representative"), the Official Committee of Asbestos Health Claimants (the "Asbestos Health Claimants Committee"), and the Official Committee of Trade Creditors (the "Trade Creditors Committee") (the foregoing are collectively referred to herein as the "Plan Proponents") having proposed and filed (a) the Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. dated October 21, 1996 (the "October 21 Plan"), (b) the Disclosure Statement With Respect to Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. dated October 21, 1996 (the "October 21 Disclosure Statement"), (c) the Supplement To Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. and Related Disclosure Statement dated October 22, 1996 (the "October 22 Supplement") and (d) the Supplemental Technical Modifications to Modified Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. dated November 27, 1996 (the "Technical Modifications") (the October 21 Plan, including all Plan Documents, exhibits, appendices, schedules and annexes attached thereto, as modified, amended and supplemented by the October 22 Supplement and the Technical Modifications, is herein referred to as the "Plan"[1]); the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Bankruptcy Court") having entered orders dated October 21, 1996 and October 23, 1996 approving the October 21 Disclosure Statement and the October 22 Supplement (the October 21 Disclosure Statement, as modified, amended and supplemented by the October 22 Supplement, including all exhibits, appendices, schedules and annexes attached thereto, is herein referred to as the "Disclosure Statement") as containing adequate information in accordance with Section 1125 of the Bankruptcy Code; the Bankruptcy Court having presided over the proceedings regarding Confirmation of the Plan pursuant to the Order dated November 13, 1996 (the "Procedural Order") entered by the United States District Court for the Middle District of Florida, Tampa

---

1. Capitalized terms used in these Findings and Conclusions shall have the meanings ascribed to them in the Plan, unless otherwise indicated or defined in the Confirmation Judgment and Order (the "Confirmation Order") or herein. Any capitalized term used in these Findings and Conclusions that is neither defined herein nor defined in the Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

Division (the "District Court") in Case No. 96–2220–CIV–21 (Bankr.Consolidated Case Nos. 90–10016–8B1 and 90–10017–8B1) (as used herein, the term "Court" shall refer to the Bankruptcy Court and the District Court); the Court having reviewed the Plan, the Disclosure Statement, all pleadings and memoranda filed in connection with Confirmation of the Plan and all objections to Confirmation of the Plan including, but not limited to, objections to Confirmation of the Plan and/or joinders to such objections filed by Rapid–American Corporation, AlliedSignal Corporation, National Union Fire Insurance Company of Pittsburgh, PA, The Aetna Casualty and Surety Company, Florida Insurance Guaranty Association, Plaisted London Market Insurers, Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, Employers Mutual Casualty Company, Allstate Insurance Company, Federal Insurance Company, Protective National Insurance Company of Omaha, American Insurance Company, National Surety Corporation, Century Indemnity Company, Home Insurance Company, Home Indemnity Company, Eric Reinsurance Company, Highlands Insurance Company and Old Republic Insurance Company, the Texas Comptroller of Public Accounts, Steve D. Burnett, Jr., Pittsburgh Corning Corporation, the United States of America on behalf of the United States Environmental Protection Agency, Glenn Hasenauer, the Tennessee Department of Revenue, the New York City Housing Authority, Florida Department of Revenue, Bradford White Corporation, the State of Michigan Department of Treasury, Sergio Andrade, Jim Walter Corporation and Jasper Corp., and all responses thereto; the Court having considered the statements and arguments of counsel in support of, and in opposition to, Confirmation of the Plan presented at a hearing before the Bankruptcy Court which commenced on November 18, 1996 and which concluded on December 5, 1996 (the "Confirmation Hearing"); the Court having considered all testimony presented and evidence admitted at the Confirmation Hearing; the Court having taken judicial notice of the papers and pleadings on file in the Reorganization Cases, including, but not limited to, any adversary proceedings relating to the Reorganization Cases and taking into consideration the law of the case; and the Court finding that (a) notice of the Confirmation Hearing and the opportunity of any party in interest to object to or to otherwise be heard with respect to the Confirmation of the Plan was reasonable, adequate and sufficient, in accordance with applicable law including, but not limited to, Section 524(g) of the Bankruptcy Code and Bankruptcy Rule 2002(b), as to all parties to be affected by the Plan and the transactions contemplated thereby and (b) the legal and factual bases set forth in the pleadings and memoranda filed in connection with Confirmation of the Plan and presented at the Confirmation Hearing establish sufficient cause for the relief granted in the Confirmation Order, the Court hereby makes the following Findings of Fact and Conclusions of Law.[2]

## A. *Findings Of Fact*

### 1. Background

1. On October 12, 1990 (the "Petition Date"), Celotex and Carey Canada filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in the Reorganization Cases. The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and the Order Granting Motion for Authority to Op-

---

**2.** These Findings and Conclusions constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

This Court takes the position that all rulings of this Court are law of the case, the doctrine of judicial notice being only a mechanism to illuminate that which has already been observed, but momentarily forgotten. *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1358 & n. 6 (9th Cir.1986).

erate Business entered by the Bankruptcy Court on October 12, 1990.

3. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to the Order Granting Motion for Joint Administration of Related Estates for Procedural Purposes Only entered by the Bankruptcy Court on October 12, 1990.

4. On and since the Petition Date, Celotex has manufactured and distributed building materials in five (5) major product segments: asphalt roofing products, foam insulation products, gypsum wallboard, acoustical ceiling products and fiberboard products. These products are marketed nationwide, primarily to building materials dealers, wholesalers, home center retailers, distributors and specialized applicators.[3]

5. From and including April 21, 1988 to the Petition Date and continuing thereafter, Jim Walter Corporation ("JWC") owned all the outstanding shares of preferred and common stock of Celotex. In addition, on the Petition Date, JWC owned all the outstanding shares of stock of the non-debtor companies, Center for Applied Engineering, Inc. ("CAE") and Jim Walter International Corporation ("JWIC"). Subsequent to the Petition Date, JWC formed Medical Market Place International, Inc. ("MMI") and has continued to own all outstanding shares of stock of MMI. From and including April 21, 1988 to the Petition Date, all the outstanding shares of stock of JWC were owned by JWC Holdings Corporation ("JWC Holdings") and all the outstanding shares of stock of JWC Holdings were owned by Jasper Corp. ("Jasper"). In 1995, JWC Holdings was dissolved. Since that date, all the outstanding shares of stock of JWC have been owned by Jasper. From and including April 21, 1988 and through Confirmation of the Plan, there have been no other changes in the direct or indi-

rect ownership of the shares of stock of Celotex. Further, pursuant to that certain Settlement Agreement dated June 12, 1996 (the "Settlement Agreement"), a copy of which is attached to the Disclosure Statement as Exhibit B, Jasper and the Jasper shareholders agreed, among other things, not to transfer or issue shares of Jasper stock prior to the date on which the Trust obtains the Reorganized Celotex Common Stock.

6. The outstanding shares of preferred and common stock of Celotex held by JWC were not worthless at any point in time prior to June of 1996, and JWC has not claimed a worthless stock loss for the outstanding preferred and common stock of Celotex.

7. On the Petition Date, Celotex owned all the outstanding shares of stock of Carey Canada. Prior to 1986, Carey Canada engaged in asbestos mining and milling operations. In April 1986, Carey Canada ceased its mining operations and began the process of an orderly liquidation of its mining equipment and other assets. From and including the Petition Date and through Confirmation of the Plan, there have been no changes in the direct or indirect ownership of the stock of Carey Canada.

8. On the Petition Date, Celotex also owned all the outstanding shares of stock of Celotex Financial Corporation ("CFC"). CFC was formed by Celotex on April 19, 1989, for the purpose of purchasing and reselling Celotex's trade accounts receivable. CFC has not purchased any of Celotex's trade accounts receivable since October, 1990. Since early 1991, CFC has acted as a holding company. From and including the Petition Date and through Confirmation of the Plan, there have been no changes in the direct or indirect ownership of the stock of CFC.

9. On the Petition Date, Celotex also owned all the outstanding shares of stock of

---

**3.** These findings of fact are generally supported by testimony, affidavits, and exhibits admitted in the confirmation hearing. Where appropriate, footnotes will appear with references to the transcript and/or exhibits supportive of the general subject matter under discussion. For example, paragraphs no. 4 through no. 9 of the findings is supported by the testimony of John P. Borrecca and the exhibits admitted during his testimony.

(*See* Tr. at p. 151; Exh.'s PP–A–99 to 105, 106, 113; Exh.'s PP–A–179 to 189; Exh. PP–A–211; *see also* Aff. of Jonathan W. Oorlog of Carey Canada, Exh. PP–A–123; Exh's PP–a–2 to 5). When a new subject area is introduced, a general citation will appear to the record. These citations are not exhaustive, and do not purport to include all relevant evidence on any given point.

the Celotex Inactive Subsidiaries. Although Celotex retains ownership of all the stock of the Celotex Inactive Subsidiaries, the Celotex Inactive Subsidiaries have been inactive for many years.

## 2. Development Of The Plan And The Disclosure Statement

10. On March 25, 1996, the Debtors filed the Modified Second Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. Dated as of April 1, 1996 (as amended, modified and supplemented from time to time, the "Debtors' Plan") and the Modified Second Amended and Restated Disclosure Statement With Respect to Modified Second Amended and Restated Joint Plan of Reorganization for The Celotex Corporation and Carey Canada Inc. Dated as of April 1, 1996 (as amended, modified and supplemented from time to time, the "Debtors' Disclosure Statement").

11. By order of the Bankruptcy Court dated April 9, 1996, the Debtors' Disclosure Statement was approved as containing adequate information in accordance with Section 1125 of the Bankruptcy Code.

12. The Debtors' Plan was supported by the Official Committee of Asbestos Property Damage Claimants (the "Asbestos Property Damage Claimants Committee") and the Unofficial Committee of Co–Defendants. The Debtors' Plan was opposed by the Asbestos Health Claimants Committee, the Trade Creditors Committee, the Legal Representative, and others.

13. The Bankruptcy Court scheduled a hearing for June 10, 1996 to consider confirmation of the Debtors' Plan (the "June 10 Hearing"). On the eve of the June 10 Hearing, the Plan Proponents, the Jasper Parties and Greitzer and Locks in its capacity as Veil Piercing Claimants' Representative (as defined in the VPSA) reached an agreement in principle that was ultimately memorialized in the Settlement Agreement. At the June 10 Hearing, the Bankruptcy Court continued the June 10 Hearing to June 12, 1996.

14. On June 12, 1996, as a result of the settlement reflected in the Settlement Agreement, the Debtors withdrew the Debtors' Plan. Accordingly, on the record of the hearing held on June 12, 1996, the Bankruptcy Court scheduled a confirmation hearing for October 7, 1996 with respect to any plan filed by July 12, 1996. Thereafter, by order dated June 19, 1996 (the "June 19 Order"), the Bankruptcy Court denied confirmation with respect to the Debtors' Plan and terminated the exclusive period under Section 1121(b) of the Bankruptcy Code.

15. Among other things, the June 19 Order also (a) permitted any party in interest to file a plan and disclosure statement on or before July 12, 1996, (b) scheduled a hearing to consider the adequacy of any timely filed disclosure statement for August 9, 1996, and (c) scheduled a hearing to consider confirmation of any timely filed plan to commence on October 7, 1996 (the "October 7 Hearing").

16. On July 12, 1996, the Plan Proponents filed the Plan Proponents' Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. and the Disclosure Statement With Respect to Plan Proponents' Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc.

17. Also on July 12, 1996, the Asbestos Property Damage Claimants Committee filed the Asbestos Property Damage Claimants' Committee's Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. Dated as of July 12, 1996 and the Asbestos Property Damage Claimants' Committee's Disclosure Statement With Respect to the Asbestos Property Damage Claimants' Committee's Plan of Reorganization for The Celotex Corporation and Carey Canada Inc. Dated as of July 12, 1996.

18. On August 1, 1996, the Asbestos Property Damage Claimants Committee filed the First Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. and the First Amended Disclosure Statement With Re-

spect to the Asbestos Property Damage Claimants' Committee's First Amended Plan of Reorganization for The Celotex Corporation and Carey Canada Inc. Dated as of July 31, 1996.

19. On August 29, 1996, the Plan Proponents filed the Plan Proponents' Second Amended Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. (the "Plan Proponents' Plan") and the Second Amended Disclosure Statement With Respect to the Plan Proponents' Second Amended Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. (the "Plan Proponents' Disclosure Statement"). In addition, on August 29, 1996, the Asbestos Property Damage Claimants Committee filed the Asbestos Property Damage Claimants' Committee's Modified Second Amended Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code for The Celotex Corporation and Carey Canada Inc. Dated as of August 29, 1996 (the "Property Damage Plan") and the Asbestos Property Damage Claimants' Committee's Modified Second Amended Disclosure Statement With Respect to the Asbestos Property Damage Claimants' Committee's Modified Second Amended Plan of Reorganization for The Celotex Corporation and Carey Canada Inc. Dated as of August 29, 1996 (the "Property Damage Disclosure Statement").

20. By order of the Bankruptcy Court dated August 29, 1996, the Plan Proponents' Disclosure Statement and the Property Damage Disclosure Statement were approved as containing adequate information in accordance with Section 1125 of the Bankruptcy Code.

21. On October 3, 1996, prior to the October 7 Hearing to consider confirmation of the Plan Proponents' Plan and the Property Damage Plan, the Bankruptcy Court was advised of an agreement that resolved the Asbestos Property Damage Claimants Committee's objections to the Plan Proponents' Plan, and that consequently, the Plan Proponents' Plan would be modified and the Prop-

erty Damage Plan would be withdrawn. Thereafter, the Asbestos Property Damage Claimants Committee withdrew the Property Damage Plan. On October 7, 1996, the Plan Proponents modified the Plan Proponents' Plan by filing a modified plan of reorganization (which plan of reorganization was subsequently modified, amended and supplemented to become the Plan). Consequently, on the record of the October 7 Hearing, and by order dated October 8, 1996, the Bankruptcy Court rescheduled the Confirmation Hearing to commence on November 18, 1996.

### 3. Notice Of Certain Matters Relating To The Reorganization Cases

22. By order dated November 5, 1990 (the "November 5 Order"), the Bankruptcy Court approved the method of notice of the pendency of the Reorganization Cases and the meeting of creditors pursuant to Section 341 of the Bankruptcy Code.[4]

23. The notice of the pendency of the Reorganization Cases and the creditors meeting pursuant to Section 341 of the Bankruptcy Code was implemented by the Debtors in accordance with the November 5 Order and was reasonable, adequate and sufficient and in compliance with, among other things, Bankruptcy Rule 2002(a)(1). Additionally, such notice was reasonably calculated to inform all parties in interest of the pendency of the Reorganization Cases and the creditors meeting pursuant to Section 341 of the Bankruptcy Code.

24. By order dated May 22, 1992 (the "May 22 Order"), the Bankruptcy Court established August 25, 1992 (the "General Claims Bar Date") as the last date by which a Proof of Claim, other than a Proof of Claim for certain Asbestos Claims, could be timely filed. In addition, by order dated April 21, 1993 (the "April 21 Order"), the Bankruptcy Court established July 29, 1993 (the "Asbestos Property Damage Bar Date") as the last date by which a Proof of Claim for an Asbestos Property Damage Claim could be timely filed.

---

**4.** *See* Aff. of George N. Wood, Exh. PP–A–68.

25. The Debtors consulted with Public Communications, Inc. ("PCI") as well as with the Official Committees and other parties in interest with regard to the development and establishment of a proposal for providing reasonable, adequate and sufficient notice of the General Claims Bar Date and the Asbestos Property Damage Bar Date.[5]

26. Pursuant to the May 22 Order, the Bankruptcy Court approved the Debtors' proposed method of notice of the General Claims Bar Date.

27. The notice of the General Claims Bar Date was implemented by the Debtors and PCI in accordance with the May 22 Order and was reasonable, adequate and sufficient. Additionally, such notice was reasonably calculated to inform all holders of Claims subject to the General Claims Bar Date of the pendency of the Reorganization Cases and the General Claims Bar Date.

28. Pursuant to the April 21 Order, the Bankruptcy Court approved the Debtors' proposed method of notice of the Asbestos Property Damage Bar Date.

29. The notice of the Asbestos Property Damage Bar Date was implemented by the Debtors and PCI in accordance with the April 21 Order and was reasonable, adequate and sufficient. Additionally, such notice was reasonably calculated to inform all holders of Asbestos Property Damage Claims of the pendency of the Reorganization Cases and the Asbestos Property Damage Bar Date.

30. By order dated December 14, 1995, the Bankruptcy Court established March 15, 1996 (the "Asbestos Bodily Injury Bar Date") as the last date by which a Present BI Claimant (as defined in the Disclosure Statement) could timely file a Proof of Claim.

31. By order dated December 7, 1995, the Bankruptcy Court authorized the Debtors to retain Kinsella Communications, Ltd. ("KCL") as noticing consultant to provide consulting services with respect to, among other things, notice of the Asbestos Bodily Injury Bar Date and the June 10 Hearing. KCL prepared and recommended procedures for providing notice of the Asbestos Bodily Injury Bar Date and the June 10 Hearing that included extensive use of various media components, including direct mail, paid advertising such as television, radio and newspapers, and earned media.[6]

32. By order dated December 20, 1995 (the "December 20 Order"), the Bankruptcy Court approved, in its entirety, The Celotex Corporation and Carey Canada Inc. Notification Plan dated December 1, 1995 (the "Notice Plan") prepared by KCL.

33. By order dated January 30, 1996, the Bankruptcy Court authorized Rust Consulting, Inc. (the "Claims Agent/Balloting Agent") to act as the official claims agent and official balloting agent in the Reorganization Cases. The Claims Agent/Balloting Agent was responsible for, among other things, (a) providing direct notice to all appropriate Entities of (i) the Asbestos Bodily Injury Bar Date, (ii) the hearings with respect to the adequacy of the disclosure statements, (iii) the hearings with respect to confirmation of a plan and (iv) the deadline to file objections to confirmation of a plan, (b) processing Proofs of Claim filed by holders of Asbestos Personal Injury Claims, (c) mailing solicitation packages to all appropriate Entities and (d) processing and tabulating all ballots.[7]

34. The Claims Agent/Balloting Agent properly and timely fulfilled all of its duties in accordance with applicable orders of the Bankruptcy Court.

35. The notice of the Asbestos Personal Injury Bar Date and the June 10 Hearing was provided by the Debtors, KCL and the Claims Agent/Balloting Agent in accordance with the December 20 Order and the Notice Plan and was reasonable, adequate and sufficient. Additionally, such notice was reasonably calculated to inform all creditors of the Debtors and parties in interest, including, but not limited to, Present BI Claimants (as defined in the Disclosure Statement) and the Veil Piercing Claimants, of the pendency of

---

**5.** *See* Aff. of James R. Frankowiak, Exh. PP–A–64; Exh. PP–A–67.

**6.** *See* Aff. of Katherine Kinsella, Exh. PP–A–43.

**7.** *See* Aff. of Jeffrey D. Dahl, Exh. PP–A–9.

the Reorganization Cases, the Asbestos Bodily Injury Bar Date and the June 10 Hearing.

36. Notice of, among other things, the Confirmation Hearing, the deadline to file ballots to accept or reject the Plan, and the deadline to file objections to Confirmation of the Plan was provided by the Claims Agent/Balloting Agent by direct mail to all known holders of Claims against and Interests in the Debtors and parties in interest, including, but not limited to, all Entities who requested notice as a result of the implementation of the Notice Plan.

37. As a result of the adjournments of the various confirmation hearings referenced in paragraphs 13, 14 and 21 above, and the resulting notices of the Confirmation Hearing provided at such hearings and by implementation of the Bankruptcy Court's Orders dated June 19, 1996 and October 8, 1996, notice of, among other things, the Confirmation Hearing, the deadline to file ballots to accept or reject the Plan, and the deadline to file objections to Confirmation of the Plan was provided in a manner that was reasonable, adequate and sufficient. Additionally, such notice was reasonably calculated to inform all known holders of Claims against and Interests in the Debtors and parties in interest, including, but not limited to, all Entities who requested notice as a result of the implementation of the Notice Plan and all other unknown parties having rights with respect to the Plan or the Confirmation Hearing of, among other things, the Confirmation Hearing, the deadline to file ballots to accept or reject the Plan and the deadline to file objections to Confirmation of the Plan.

This Court finds the overall policy of providing the widest dissemination of notice to potential or actual parties in interest has been effectuated at every level of the bankruptcy process.

38. By the Confirmation Order, the Bankruptcy Court has approved the Technical Modifications to the Plan as proposed by the Plan Proponents. Such Technical Modifications were provided to all appropriate Entities in a manner that was reasonable, adequate and sufficient.[8]

### 4. Solicitation With Respect To The Plan

39. By order dated October 8, 1996, the Bankruptcy Court authorized and directed the Claims Agent/Balloting Agent to mail solicitation packages, consisting of, among other things, the Plan, the Disclosure Statement, notices of the Confirmation Hearing and related matters, and a Ballot or Notice of Non–Voting Status, as applicable, to all appropriate Entities. In addition, by order dated October 21, 1996, the Bankruptcy Court approved certain letters advocating support of the Plan prepared by (a) the Legal Representative, the Asbestos Health Claimants Committee and the Trade Creditors Committee, (b) the Debtors and (c) the Asbestos Property Damage Claimants Committee, respectively, and authorized and directed the Claims Agent/Balloting Agent to enclose such letters within the solicitation packages.

40. All solicitation packages were properly and timely distributed to all appropriate Entities by the Claims Agent/Balloting Agent.

### 5. Balloting Results With Respect To The Plan

41. The Claims Agent/Balloting Agent processed and tabulated all ballots filed with respect to the Plan in accordance with the requirements of the Bankruptcy Code, Bankruptcy Rules and orders of the Bankruptcy Court. The balloting procedures utilized by the Claims Agent/Balloting Agent and the resulting voting with respect to the Plan were fair and properly conducted. The results of the ballot tabulation process are set forth in the Revised Ballot Tabulation Report prepared by the Claims Agent/Balloting Agent and filed with the Bankruptcy Court on November 25, 1996.[9]

42. Celotex Classes 1, 2, 3, 5 and 7 are unimpaired and are deemed to have accepted

---

**8.** *See* Tr. at pp. 1267–1323.

**9.** *See* Exh. PP–A–198.

the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

43. Celotex Classes 4, 6, 8 and 9 are impaired. Celotex Classes 4, 6 and 8 have voted to accept the Plan. Holders of Interests in Celotex Class 9 have consented to their treatment under the Plan.

44. 570 ballots were returned and properly cast by holders of Celotex Class 4 Claims. 562 ballots representing $27,245,080 in amount of Celotex Class 4 Claims were counted as having been cast in favor of the Plan and 8 ballots representing $84,005 in amount of Celotex Class 4 Claims were counted as having been cast against the Plan. More than 99% in dollar amount and more than 98% in number of the holders of Celotex Class 4 Claims voting on the Plan voted to accept the Plan. Accordingly, holders of Celotex Class 4 Claims accepted the Plan by a vote of at least two-thirds in dollar amount and more than one-half in number of those voting, other than any entity designated under Section 1126(e) of the Bankruptcy Code.

45. By order dated April 9, 1996 (the "April 9 Order"), the Bankruptcy Court estimated Asbestos Personal Injury Claims for purposes of voting to accept or reject the Debtors' Plan. By further order of the Bankruptcy Court, the estimation procedures set forth in the April 9 Order were made applicable for purposes of voting to accept or reject the Plan.

46. 319,445 ballots were returned and properly cast by the holders of Celotex Class 6 Claims. In accordance with the April 9 Order and subsequent order of the Bankruptcy Court, 312,660 ballots representing $566,232 in amount of Celotex Class 6 Claims were counted as having been cast in favor of the Plan and 6,785 ballots representing $10,-840 in amount of Celotex Class 6 Claims were counted as having been cast against the Plan. More than 98% in dollar amount and more than 97% in number of the holders of Celotex Class 6 Claims voting on the Plan voted to accept the Plan. Accordingly, holders of Celotex Class 6 Claims accepted the Plan by a vote of at least two-thirds in dollar amount and more than one-half in number of those voting, other than any entity designat-

ed under Section 1126(e) of the Bankruptcy Code.

47. By order dated May 6, 1996 (the "May 6 Order"), the Bankruptcy Court estimated Asbestos Property Damage Claims for purposes of voting to accept or reject the Debtors' Plan. By further order of the Bankruptcy Court, the estimation procedures set forth in the May 6 Order were made applicable for purposes of voting to accept or reject the Plan.

48. 305 ballots were returned and properly cast by the holders of Celotex Class 8 Claims. In accordance with the May 6 Order and subsequent order of the Bankruptcy Court, 303 ballots representing $737,029 in amount of Celotex Class 8 Claims were counted as having been cast in favor of the Plan and 2 ballots representing $10,000 in amount of Celotex Class 8 Claims were counted as having been cast against the Plan. More than 98% in dollar amount and more than 99% in number of the holders of Celotex Class 8 Claims voting on the Plan voted to accept the Plan. Accordingly, holders of Celotex Class 8 Claims accepted the Plan by a vote of at least two-thirds in dollar amount and more than one-half in number of those voting, other than any entity designated under Section 1126(e) of the Bankruptcy Code.

49. Carey Canada Classes 1, 2, 3, 5 and 7 are unimpaired and are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

50. Carey Canada Classes 4, 6, 8 and 9 are impaired. Carey Canada Classes 4, 6 and 8 have voted to accept the Plan. Holders of Interests in Carey Canada Class 9 have consented to their treatment under the Plan.

51. 26 ballots were returned and properly cast by holders of Carey Canada Class 4 Claims. 26 ballots representing $844,212 in amount of Carey Canada Class 4 Claims were counted as having been cast in favor of the Plan and 0 ballots representing $0 in amount of Carey Canada Class 4 Claims were counted as having been cast against the Plan. One hundred percent (100%) in both dollar amount and number of the holders of Carey Canada Class 4 Claims voting on the

Plan voted to accept the Plan. Accordingly, holders of Carey Canada Class 4 Claims accepted the Plan by a vote of at least two-thirds in dollar amount and more than one-half in number of those voting, other than any entity designated under Section 1126(e) of the Bankruptcy Code.

52. 306,013 ballots were returned and properly cast by the holders of Carey Canada Class 6 Claims. In accordance with the April 9 Order and subsequent order of the Bankruptcy Court, 299,251 ballots representing $535,652 in amount of Carey Canada Class 6 Claims were counted as having been cast in favor of the Plan and 6,762 ballots representing $10,843 in amount of Carey Canada Class 6 Claims were counted as having been cast against the Plan. More than 98% in dollar amount and more than 97% in number of the holders of Carey Canada Class 6 Claims voting on the Plan voted to accept the Plan. Accordingly, holders of Carey Canada Class 6 Claims accepted the Plan by a vote of at least two-thirds in dollar amount and more than one-half in number of those voting, other than any entity designated under Section 1126(e) of the Bankruptcy Code.

53. 282 ballots were returned and properly cast by the holders of Carey Canada Class 8 Claims. In accordance with the May 6 Order and subsequent order of the Bankruptcy Court, 281 ballots representing $674,-057 in amount of Carey Canada Class 8 Claims were counted as having been cast in favor of the Plan and 1 ballot representing $5,000 in amount of Carey Canada Class 8 Claims were counted as having been cast against the Plan. More than 99% in dollar amount and more than 99% in number of the holders of Carey Canada Class 8 Claims voting on the Plan voted to accept the Plan. Accordingly, holders of Carey Canada Class 8 Claims accepted the Plan by a vote of at least two-thirds in dollar amount and more than one-half in number of those voting, other than any entity designated under Section 1126(e) of the Bankruptcy Code.

### 6. Compliance With Requirements Of The Bankruptcy Code

54. The Plan is dated and identifies the name of the Entities submitting the Plan, in accordance with Bankruptcy Rule 3016(b).

55. The Claims or Interests in each class are substantially similar to the other Claims or Interests in such class. A reasonable basis exists for the choices made in the Plan's classification scheme, and the classification of Claims and Interests is fair, reasonable and necessary.

56. The Plan designates a separate class of Claims consisting only of every unsecured claim that is less than, or voluntarily reduced to, an amount equal to or less than $2,500, which designation is fair, reasonable and necessary for administrative convenience.

57. Article 3 of the Plan designates classes of Claims, other than Claims of a kind specified in Section 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code, and classes of Interests.

58. Article 4 of the Plan specifies those classes of Claims and Interests that are not impaired under the Plan.

59. Article 4 of the Plan specifies the treatment of each class of Claims or Interests that is impaired under the Plan.

60. Article 4 of the Plan provides the same treatment for each Claim or Interest of a particular class, unless the holder of a particular Claim or Interest agrees to a less favorable treatment of such particular Claim or Interest.

61. The Plan provides adequate means for implementation of the Plan. Articles 4, 5 and 9 of the Plan provide for, among other things: (a) the distribution of Cash, in satisfaction of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Claims in Celotex Classes 1, 3 and 4 and Carey Canada Classes 1, 3 and 4; and (b) reasonable and appropriate mechanisms for the establishment and funding of the Trust, which Trust shall, among other things, address and direct the liquidation and resolution of all Asbestos Claims and preserve, hold, manage and maximize the Trust Assets for use in paying and satisfying Allowed Asbestos Claims. The Plan provides for the Trust to be funded by, among other things, the assets in the Settlement Account, the

Reorganized Celotex Common Stock and the Reorganized Carey Canada Common Stock. In addition, the Plan provides for the acquisition by Reorganized Celotex of (a) certain operating assets of JWC and/or (b) either all of the outstanding and issued stock or other equity interests in JWIC and CAE or certain operating assets of JWIC and CAE.[10]

62. Article 9.7 of the Plan provides that the Certificate of Incorporation of Reorganized Celotex shall, as of the Effective Date, be amended in its entirety substantially in the form set forth in Exhibit 3 to the Plan. The amended Certificate of Incorporation of Reorganized Celotex prohibits the issuance of non-voting equity securities as part of the Reorganization Cases. Article 9.7 of the Plan also provides that the Letters Patent of Carey Canada shall be amended to, among other things, prohibit the issuance of non-voting equity securities as part of the Reorganization Cases. The Plan also provides, as to the classes of securities possessing voting power, for an appropriate distribution of such power among such classes.

63. The manner of selection of the initial officers and directors of Reorganized Celotex and Reorganized Carey Canada, the initial Trustees of the Trust, the initial members of the Trust Advisory Committee, the initial members of the PD Advisory Committee, the initial Property Damage Claims Administrator, the initial Legal Representative and the initial Representative Indirect Asbestos Claimant and any successors thereto is consistent with the interests of holders of Claims and Interests and with public policy.

64. Pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Plan constitutes a motion by the Debtors to reject any unexpired lease or executory contract that has not been expressly assumed by the Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date, except those executory contracts and unexpired leases listed on Exhibit 2 to the Plan (as such list may have been amended or supplemented up to and including the Confirmation Date) and except those unexpired leases or executory contracts the Debtors entered into after the Petition Date to the extent such lease or

contract is unexpired or executory, respectively, under Section 365 of the Bankruptcy Code.

65. Article 6.1(b) of the Plan provides for the assumption of the executory contracts and unexpired leases listed on Exhibit 2 to the Plan (as such list may have been amended or supplemented up to and including the Confirmation Date).

66. The decisions of the Debtors regarding the rejection of executory contracts or unexpired leases, as reflected in the Plan, are based on and are well within the reasonable and sound business judgment of the Debtors and are in the best interests of the Debtors and their Estates. Further, the assumption of the executory contracts and unexpired leases as set forth in the Plan is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors and their Estates, and the Debtors will promptly cure any defaults and provide adequate assurance of future performance.

67. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Moreover, the Plan Proponents, their respective agents, directors, officers, employees and professionals, and any other Entities that solicited acceptances of the Plan including, but not limited to, the Asbestos Property Damage Claimants Committee, have acted in good faith within the meaning of Section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded thereby.

68. The totality of the circumstances surrounding the formulation and proposal of the Plan, including, but not limited to, the evidence presented at the Confirmation Hearing that the Plan is the result of extensive arms' length negotiations between and among the Plan Proponents and others and that the Plan is designed and intended, among other things, to (i) preserve and protect the viable businesses of the Debtors, (ii) provide a simple, economical procedure for obtaining and encouraging the prompt, efficient and equitable resolution of all Asbestos Claims, (iii) provide fair and equitable compensation to

---

**10.** *See* testimony of John P. Borrecca, Tr. at p. 151; Exh.'s PP–A–179 to 189; Exh. PP–A–211.

holders of non-asbestos Claims, and (iv) resolve disputed issues in a complete and fair manner, demonstrates that the Plan was proposed in good faith and not by any means forbidden by law.[11]

69. The Debtors, Reorganized Celotex, Reorganized Carey Canada, the Legal Representative and the Official Committees and their respective Affiliates, officers, directors, stockholders, members, representatives, attorneys, accountants, financial advisors and agents have reasonably relied on the opinions of counsel, accountants and other experts or professionals employed by the Debtors, Reorganized Celotex, Reorganized Carey Canada, the Legal Representative and the Official Committees, respectively, in formulating the Plan, soliciting votes and managing the cases. Such reliance conclusively establishes good faith and the absence of willful misconduct.

70. The Plan was proposed with the legitimate and honest purpose of reorganizing the business affairs of the Debtors and maximizing returns to creditors of the Debtors.

71. The primary purpose of the Plan is not the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* (the "Securities Act").

72. All payments made or to be made by the Plan Proponents, the Debtors, or by an Entity issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Reorganization Cases, or in connection with the Plan and incident to the Reorganization Cases, have been approved by, are approved pursuant to the Confirmation Order or are subject to the further approval of, the Bankruptcy Court as reasonable.

73. The Plan Proponents disclosed the identity and affiliations of the initial directors and officers of Reorganized Celotex and Reorganized Carey Canada (including any insiders that will be employed or retained by Reorganized Celotex and Reorganized Carey Canada), the initial Trustees of the Trust, the initial members of the Trust Advisory Committee, the initial members of the PD Advisory Committee, the initial Legal Repre-

sentative, the initial Property Damage Claims Administrator, and the initial Representative Indirect Asbestos Claimant. Based on, among other things, the experience, education and/or particular skills of each, the appointment or continuance of the proposed directors, officers, trustees, advisors, members, representatives and administrators is consistent with the interests of the holders of Claims and Interests and with public policy.

74. At the Confirmation Hearing, the Plan Proponents disclosed the identity of the initial directors of Reorganized Celotex as Dennis M. Ross, Walter F. Johnsey and William B. Long and the identity of the initial directors of Reorganized Carey Canada as Jean Paul Bolduc and Jacques Plante. The Plan Proponents also disclosed the nature of the compensation to be paid to such individuals.

75. The compensation to be paid to the initial directors of Reorganized Celotex and Reorganized Carey Canada is fair, reasonable and necessary under the circumstances and will help to ensure successful implementation of the Plan and the long-term viability of Celotex's businesses.

76. The Plan provides for the selection of successor directors of Reorganized Celotex and Reorganized Carey Canada.

77. The Plan Proponents have disclosed the identity of the initial officers of Reorganized Celotex. In addition, the Plan Proponents have disclosed the identity of the initial officers of Reorganized Carey Canada. The Plan Proponents also disclosed the nature of the compensation to be paid to such individuals.

78. The Compensation Programs and other compensation arrangements for Reorganized Celotex's and Reorganized Carey Canada's key executives and employees as contemplated to exist at the Effective Date and the aggregate compensation afforded thereby (including salaries, annual incentive compensation, retention awards, long-term compensation, other compensation arrangements and the executive employment and severance agreements) provide fair and rea-

---

**11.** *See Hanson v. First Bank of South Dakota,* 828   F.2d 1310, 1315–16 (8th Cir.1987).

sonable remuneration for the key executives and employees covered thereby, are necessary under the circumstances and will help to ensure successful implementation of the Plan and the long-term viability of Celotex's businesses.[12]

79. The Plan provides for the selection of successor officers of Reorganized Celotex and Reorganized Carey Canada.

80. The Plan Proponents have disclosed the identity of the Legal Representative as David S. Shrager. The Plan Proponents also disclosed the nature of compensation to be paid to the Legal Representative.[13]

81. The compensation to be paid to the Legal Representative is fair, reasonable and necessary under the circumstances and will help to ensure the successful operation of the Trust.

82. The Plan provides for the selection of a successor Legal Representative.

83. The Plan Proponents have disclosed the identity of the initial Trustees of the Trust as Frank Andrews, John H. Laeri, Jr., Francis E. McGovern, Sharon M. Meadows and James W. Stevens, and the nature of the compensation to be paid to them. The Trustees are Disinterested.[14]

84. The compensation to be paid to the Trustees is fair, reasonable and necessary under the circumstances and will help to ensure the successful operation of the Trust.

85. The Plan provides for the selection of successor Trustees.

86. The Plan Proponents have disclosed the identity of the initial members of the Trust Advisory Committee as Frederick M. Baron, Paul T. Gillenwater, Leonard C. Jacques, Steven Kazan, Gene Locks and Joseph F. Rice, and the nature of the compensation to be paid to them.

87. It is fair, reasonable and necessary under the circumstances and will help to ensure the successful operation of the Trust for the members of the Trust Advisory Com-

mittee to receive reimbursement of expenses incurred in performing their duties.

88. The Plan provides for the selection of successor members of the Trust Advisory Committee.

89. The Plan Proponents have disclosed the identity of the initial members of the PD Advisory Committee as Daniel Speights, Martin Dies and Karen Cordry, and the nature of the compensation to be paid to them.

90. It is fair, reasonable and necessary under the circumstances and will help to ensure the successful operation of the Trust for the members of the PD Advisory Committee to receive reimbursement of expenses incurred in performing their duties.

91. The Plan provides for the selection of successor members of the PD Advisory Committee.

92. The Plan Proponents disclosed the identity of the initial Property Damage Claims Administrator as W.D. Hilton, Jr. and the nature of the compensation to be paid to him. The initial Property Damage Claims Administrator is Disinterested.[15]

93. The compensation to be paid to the Property Damage Claims Administrator is fair, reasonable and necessary under the circumstances and will help to ensure the successful operation of the Trust.

94. The Plan provides for the selection of successor Property Damage Claims Administrators.

95. The Plan Proponents have disclosed the identity of the initial Representative Indirect Asbestos Claimant as Anne Cohen.

96. It is fair, reasonable and necessary under the circumstances and will help to ensure the successful operation of the Trust for the Representative Indirect Asbestos Claimant to receive reimbursement of expenses incurred in performing her duties.

Only disinterested Trustees, Trustee Advisory Committee Members, and other, similar,

---

12. *See* Aff. of Norman P. Harberger, Exh. PP–A–134; Exh. PP–A–135.

13. *See* testimony of David S. Shrager, Tr. at p. 587.

14. *See* Exh.'s PP–A–193 to 197.

15. *See* testimony of Wilburn D. Hilton, Jr., Tr. at p. 615; Exh.'s PP–A–192, PP–A–220.

Court appointees shall receive compensation beyond reimbursement of expenses. *See* 11 U.S.C. § 327.

The Trust may only pay reasonable, reimbursable expenses of Trustees, Trustee Advisory Committee Members, and other, similar, Court appointees, and only to the extent allowed by the Administrative Office of the Federal Courts guidelines for Judiciary travel.

97. The Debtors' current businesses do not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after Confirmation of the Plan.

98. The Plan provides that holders of Allowed Claims in Celotex Class 4 and Carey Canada Class 4 will receive a distribution equal to 90% of the Allowed Amount of their Claims, in Cash, on the Distribution Date.

99. The proposed distribution under the Plan to holders of Allowed Claims in Celotex Class 4 and Carey Canada Class 4 is fair, reasonable, has an adequate factual basis and is appropriate.

100. The projections that the initial distributions under the Plan provide for a 12% recovery of the applicable Scheduled Values (as defined in the Asbestos Personal Injury Claims Resolution Procedures) or Allowed Costs (as defined in the Asbestos Property Damage Claims Resolution Procedures), as the case may be, to holders of Allowed Claims in both Celotex Classes 6 and 8 and Carey Canada Classes 6 and 8, are fair, reasonable, have an adequate factual basis and are appropriate.

101. In a liquidation under Chapter 7 of the Bankruptcy Code, holders of Claims and Interests would receive no value for the Debtors' ongoing operations, but would instead receive distributions only from the liquidation of the Debtors' assets.

102. The value of the Debtors' assets is less than the value that will be realized by the holders of Claims and Interests under the Plan.

103. Additional costs of administration would be incurred in a Chapter 7 liquidation, including costs and expenses of liquidation, the fees of the Chapter 7 trustee and the fees of professionals that a trustee would retain. The additional costs of a Chapter 7 liquidation would diminish the recovery realized by creditors of the Debtors' Estates.

104. Liquidation of the Debtors' assets under Chapter 7 would result in a loss to the Debtors' Estates of the following assets, among others: (a) the Insurance Cooperation Agreements; (b) certain tax benefits realized as a result of implementation of the Plan; and (c) the monies and other benefits realized from the Debtors' settlements with the Jasper Parties, the Drummond Interests and others.

105. The Celotex liquidation analysis, which is attached to the Disclosure Statement as Exhibit I and which concludes that holders of unsecured claims against Celotex (including holders of Claims in Celotex Classes 3, 4, 5, 6 and 8) would receive 1.3% of the amount of their Claims in a Chapter 7 liquidation, is reasonable and is supported by the evidence presented at the Confirmation Hearing.[16]

106. The Carey Canada liquidation analysis, which is attached to the Disclosure Statement as Exhibit J and which concludes that holders of unsecured claims against Carey Canada (including holders of Claims in Carey Canada Classes 3, 4, 5, 6 and 8) would receive .08% of the amount of their Claims in a Chapter 7 liquidation, is reasonable and is supported by the evidence presented at the Confirmation Hearing.

107. The Plan provides that each holder of an Allowed Administrative Claim, an Allowed Celotex Priority Claim and an Allowed Carey Canada Priority Claim, except to the extent that the holder of such Claim has agreed to different treatment, shall receive the Allowed Amount of such holder's Claim, in Cash, on the Distribution Date, except those Administrative Claims representing post-petition liabilities incurred in the ordinary course of business of the Debtors and post-petition contractual liabilities arising under loans or advances to the Debtors, which Claims shall be paid by Reorganized Celotex

---

**16.** *See* testimony of Clifford L. Fitzgerald, Tr. at p. 505; Exh. PP–A–153.

or Reorganized Carey Canada, as applicable, in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

108. The Plan provides that each holder of an Allowed Priority Tax Claim, including Claims of a kind specified in Section 507(a)(8) of the Bankruptcy Code, except to the extent that the holder of such Claim has agreed to different treatment, shall receive the Allowed Amount of such holder's Priority Tax Claim, in Cash, on the Distribution Date.

109. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Reorganized Celotex, Reorganized Carey Canada or the Trust, other than any such liquidation or reorganization as is proposed in the Plan.[17]

110. As demonstrated by, among other things, the financial information contained in Article 7 of the Disclosure Statement, Exhibits G and H to the Disclosure Statement, and the evidence presented at the Confirmation Hearing with respect to the Debtors' financial condition, the Debtors will be able to meet their financial obligations under the Plan.

111. The Debtors will possess Cash necessary to satisfy Allowed Administrative Claims and Allowed Priority Tax Claims on the Distribution Date, or as otherwise required by Article 2 of the Plan.

112. The Debtors will possess Cash necessary to satisfy Allowed Claims in Celotex Classes 1, 3 and 4 and Carey Canada Classes 1, 3 and 4 on the Distribution Date.

113. The Debtors will possess Cash necessary to cure any defaults relating to all executory contracts and unexpired leases assumed pursuant to the terms of the Plan.

114. Celotex will possess Cash necessary to satisfy the other transfer obligations it is required to make on the Distribution Date, the Effective Date or otherwise, as required by the Plan. Carey Canada will possess Cash necessary to satisfy the other transfer obligations it is required to make on the Distribution Date, the Effective Date or otherwise, as required by the Plan.

115. The Plan incorporates a series of agreements negotiated among the Plan Proponents and other entities, including, but not limited to, the JWC Stock Purchase Agreement, the Affiliate Asset Purchase Agreements, the Insurance Cooperation Agreements, Tax Cooperation and Indemnification Agreement, and the Agreement Regarding Disputed Claims, to ensure the success and the feasibility of the Plan.[18]

116. The terms and conditions of the agreements contemplated by the Plan, including, but not limited to, the JWC Stock Purchase Agreement, the Affiliate Asset Purchase Agreements, the Insurance Cooperation Agreements, the Tax Cooperation and Indemnification Agreement, and the Agreement Regarding Disputed Claims are fair, equitable, reasonable and in the best interests of the Debtors' creditors and their Estates.

117. The demonstrated value of the assets to be purchased by Celotex pursuant to the Affiliate Asset Purchase Agreements (the "Purchased Assets") is reasonably equivalent to the price to be paid for such Purchased Assets. The purchase of the Purchased Assets by Celotex would not be consummated in the absence of the protection given under the terms of the Plan. The purchase of the Purchased Assets by Celotex was separately negotiated, adequately supported by good and valuable consideration and subjected to review and approval by the Creditors (as defined in the Affiliate Asset Purchase Agreements).

118. The Plan embodies various settlements and compromises among the holders of Claims against and Interests in the Debtors.

119. The transfers to Celotex contemplated by or effected pursuant to the Affiliate Asset Purchase Agreements and the transfers to Jasper contemplated by or effected pursuant to the JWC Stock Purchase Agree-

---

**17.** *See In re Mulberry Phosphates, Inc.*, 149 B.R. 702, 708–09 (Bankr.M.D.Fla.1993).

**18.** *See* Exh.'s PP–A–179 to 183, 185–186.

ment do not constitute fraudulent transfers, fraudulent transactions or fraudulent conveyances or otherwise constitute a fraud on creditors of any of the parties thereto under any state or federal law, rule or statute.

120. The terms and conditions of the settlements and compromises contained in the Plan are fair, reasonable, equitable and in the best interests of the Debtors' creditors and their Estates. The settlements and compromises reflect a balance of the risk and expense of litigation against the benefits of the resolution of the dispute addressed by each such settlement or compromise. All of the settlements and compromises are within the range of reasonableness.

121. The Plan establishes a Trust to address, liquidate, resolve, and disallow or allow and pay Asbestos Claims, which will operate in accordance with the Asbestos Claims Resolution Procedures.

122. The Trust established under the Plan is a "qualified settlement fund" within the meaning of IRC § 468B and the regulations issued pursuant thereto. In addition, the Celotex Settlement Fund Recipient (as defined in the VPSA), which was established pursuant to an order of the Bankruptcy Court, is a "qualified settlement fund" within the meaning of IRC § 468B and the regulations issued pursuant thereto.[19]

123. The receipt of the Veil Piercing Settlement Fund by the Celotex Settlement Fund Recipient, pursuant to the terms of the VPSA and orders of the Bankruptcy Court, will not result in taxable income to Celotex or the Celotex Settlement Fund Recipient. If Celotex is required to recognize income, it will be entitled to a corresponding offsetting deduction.

124. Pursuant to the terms of the Plan and the terms of the Financial Accommodations, the Financial Accommodations are properly classified as debt for federal income tax purposes.

125. As provided in IRC § 108, Celotex will not recognize cancellation of indebtedness income and its tax attributes will not be reduced as a result of the transfer of Cash, issuance of Reorganized Celotex Common Stock and other property to the Trust and the assumption by the Trust of all liabilities and obligations of Celotex and Carey Canada for Asbestos Claims.

126. The Asbestos Claims Resolution Procedures provide reasonable assurance that the Trust will value, and be in a financial position to pay, Asbestos Claims, both present and future (demands), in substantially the same manner.[20]

127. The procedures for administering and making distributions with respect to Asbestos Claims by the Trust are reasonable and satisfy the requirements of Section 524(g) of the Bankruptcy Code.

128. The evidence admitted at the confirmation hearing establishes the Plan satisfies all of the requirements of Section 524(g) of the Bankruptcy Code.

129. On the Effective Date or as soon thereafter as is practicable, the following assets, among others, will be transferred to, vested in and assumed by the Trust, subject to the notification requirements contained in Articles 11.6, 11.7, 11.8 and 11.9 of the Plan:

a. the Reorganized Celotex Common Stock, the value of which is estimated at $550 million to $650 million;

b. $150.482 million, representing the Cash and investment component of the Veil Piercing Settlement Fund, and 10,941,326 shares of Walter Industries, Inc. common stock, the value of which is estimated at $151.866 million, as of October 31, 1996;

c. the Celotex Cash and the Carey Canada Cash to be paid to the Trust on the Effective Date by Celotex and Carey Canada, the value of which is estimated at $8–25 million;

d. $50 million Promissory Note issued by Reorganized Celotex in favor of the Trust;

---

19. *See* Aff. of Henry H. Miyares, Exh. PP–A–144; Exh.'S PP–A–146 & 147; Declaration of Steven E. Golden, Exh. PP–A–148; Exh.'S PP–A–149 & 150.

20. *See* testimony of John P. Borrecca, Tr. at p. 151.

e. $150 million Promissory Note issued by Reorganized Celotex in favor of the Trust;

f. $12 million, representing the estimated value of the Tax Escrow Proceeds to be available on or before May 15, 1999;

g. the Reorganized Carey Canada Common Stock;

h. all Cash derived from or paid pursuant to any Predecessor Settlement Agreement with eligible companies, including, but not limited to, Dana, Allied and Rapid American;

i. the Asbestos Insurance Recoveries;

j. the Supersedeas Bond Recoveries;

k. all of the Trust Causes of Action, which include the Trust's rights against Dana (including, but not limited to, the Dana Liabilities), Allied and Rapid–American, all of the Debtors' avoidance actions granted pursuant to and existing under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (other than those asserted in the Affiliate Action or the Equitable Subordination Action, which are expressly released and dismissed as part of the Plan), the rights of the Debtors against any Entity in respect of the Wellington Agreement, defenses to any Asbestos Claim or Demand, including, but not limited to, all defenses under Section 502 of the Bankruptcy Code, all of the Debtors' rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted (including claims against the Manville Personal Injury Settlement Trust described in Article 4.14 of the Disclosure Statement), and any other claims or rights with respect to Asbestos Claims or Demands that the Debtors would have had under applicable law if the Reorganization Cases had not occurred and the holder of such Asbestos Claim or Demand had asserted it by initiating civil litigation against the Debtors. These Trust Causes of Action in some cases will serve as assets of the Trust and in other cases will provide defenses to Claims against the Trust; and

l. certain unclaimed property and returned assets, as described in Article 9.12 of the Plan.

130. The Trust will also derive certain benefits from certain agreements with the Jasper Parties, among others, including the Insurance Cooperation Agreements and the Tax Cooperation and Indemnification Agreement. Further, pursuant to the Settlement Agreement, Jasper and the Jasper shareholders agreed, among other things, not to undertake any actions that would undermine the expected tax benefits available to Celotex, and thus agreed not to claim a worthless stock loss for the outstanding preferred and common stock of Celotex prior to the date on which the Trust obtains the Reorganized Celotex Common Stock.

131. During the course of the Reorganization Cases, the Debtors have operated at a profit.

132. Reorganized Celotex and Reorganized Carey Canada will operate free of liability for Asbestos Claims after Confirmation of the Plan.

133. Dana sold the stock of Smith & Kanzler Company (as described in the Confirmation Order) to Philip Carey Corporation ("Philip Carey") pursuant to a stock purchase agreement dated February 18, 1969 (the "Stock Purchase Agreement").

134. The Stock Purchase Agreement provided for indemnification to Philip Carey as the predecessor of the Debtor, Celotex.

135. Dana indemnification litigation is exclusively before the United States District Court for the Northern District of Ohio.[21]

136. The Plan provides that the Dana Indemnification Rights will be transferred as

---

**21.** *See Dana v. Fireman's Fund Ins. Cos. et al.,* No. 87–4012, 1988 WL 132550 (6th Cir. Dec. 18, 1988), admitted as Exh. PP–A–111.

described in Section 11.8 of the Plan and in Section IV.A.20 of the Asbestos Property Damage Claims Resolution Procedures.

137. As reflected in duly executed notices or affidavits of service filed with the Bankruptcy Court, Dana received reasonable, adequate and sufficient notice of, among other things, the Plan's treatment of the Dana Indemnification Rights.

138. Dana has not filed a timely objection to Confirmation of the Plan nor has Dana filed an objection relating to the Plan's treatment of the Dana Indemnification Rights.

139. The Trust Assets are segregated for use by the Trust. A principal purpose of the Trust is to preserve, manage and maximize Trust Assets for use in paying and satisfying Allowed Asbestos Claims.

140. The value of the Trust Assets exceeds $1.2 billion.

141. All fees payable under 28 U.S.C. § 1930, if any, have been paid or will be paid on the Effective Date. The Debtors will possess Cash necessary to pay any fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing.

142. The Plan provides for the continuation, after the Effective Date, of payment of all retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of Section 1114 of the Bankruptcy Code, at any time prior to Confirmation of the Plan, for the duration of the period the Debtors have obligated themselves to provide such benefits.[22]

143. Articles 4.2(a)(5) and 4.2(b)(5) of the Plan provide that, on the Confirmation Date, Celotex and Carey Canada as Debtors, and after the Effective Date, Reorganized Celotex and Reorganized Carey Canada, shall continue, automatically and without further act or deed, the Employee Benefit Plans maintained by the Debtors.

144. Each holder of an Allowed Employee Benefit Plan Claim shall retain, unaltered, the legal, equitable and contractual rights to which such Allowed Employee Benefit Plan Claim entitles such holder.

145. There are no classes of Interests in Celotex junior to the Interests classified in Celotex Class 9.

146. There are no classes of Interests in Carey Canada junior to the Interests classified in Carey Canada Class 9.

147. The Plan does not discriminate unfairly and is fair and equitable with respect to Celotex Class 9 and Carey Canada Class 9 inasmuch as, among other things, the holders of Interests in Celotex Class 9 and Carey Canada Class 9 have consented to their treatment under the Plan.

### 7. Additional Findings Related To Section 524(g)

148. The Supplemental Injunction, the Third Party Injunction and the VPSA Injunction are to be implemented in connection with the Trust.

149. The Supplemental Injunction, the Third Party Injunction and the VPSA Injunction are reasonable, appropriate and necessary and are critical to the viability of the business operations of Reorganized Celotex and Reorganized Carey Canada and to the successful implementation of the Plan.[23]

150. As of the Petition Date, the Debtors had been named as defendants in personal injury, wrongful death and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

151. As of the Petition Date, Celotex and Carey Canada had been named as defendants in lawsuits by approximately 99,178 and 39,803 holders of Asbestos Personal Injury Claims, respectively.

152. As of the Asbestos Personal Injury Bar Date, approximately 737,033 Asbestos Personal Injury Claims had been filed against the Debtors in an aggregate amount in excess of $203 billion.

153. As of the Petition Date, Celotex and Carey Canada had been named as defen-

---

**22.** See Aff. of Larry H. Weitzner, Exh. PP–A–131; Exh. PP–A–132.

**23.** See testimony of John P. Borrecca, Tr. at p. 151.

dants in lawsuits by approximately 189 and 121 holders of Asbestos Property Damage Claims, respectively.

154. As of the Asbestos Property Damage Bar Date, approximately 1,500 Asbestos Property Damage Claims had been filed against the Debtors in an aggregate amount in excess of $19 billion.

155. The Trust shall assume the liabilities of Celotex and Carey Canada with respect to Asbestos Claims.

156. The Trust is to be funded in whole or in part by the securities of one or more of the Debtors and by the obligations of such Debtors to make future payments, including dividends.

157. The Trust is to own a majority of the voting shares of Reorganized Celotex and Reorganized Carey Canada.

158. The Trust is to use its assets and income to pay Asbestos Claims.

159. The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Claims, which are addressed by the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction.[24]

160. The actual amounts, numbers and timing of future Demands cannot be determined.

161. Pursuit of Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands.

162. The terms of the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction, including any provisions barring actions against third parties, are set out in the Plan and in the Disclosure Statement.

163. The Plan establishes, in Celotex Classes 6 and 8 and Carey Canada Classes 6 and 8, separate classes of claimants whose Claims are to be addressed by the Trust.

164. Each class of claimants whose Claims are to be addressed by the Trust, has voted, by more than seventy-five percent (75%) of those voting, in favor of the Plan.

165. In the aggregate, all classes of claimants whose Claims are to be addressed by the Trust have voted, by more than seventy-five percent (75%) of those voting, in favor of the Plan.

166. Pursuant to court orders or other authority, the Trust shall operate through mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of Asbestos Claims, or other comparable mechanisms, that provide reasonable assurance that the Trust shall value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner.

167. The Legal Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction and transferred to and assumed by the Trust.

168. The Protected Parties are appropriate third parties, as that term is applied in Section 524(g)(4)(A)(ii) of the Bankruptcy Code, and consist of the following Entities:

(a) the Debtors, Reorganized Celotex, Reorganized Carey Canada, the Consolidated Affiliates, the Official Committees and the Legal Representative, and any of their post-Confirmation Date officers, directors, agents, employees, members, representatives, advisors, financial advisors, accountants and attorneys;

(b) the Trust, and any of its Trustees, officers, directors, agents, employees, repre-

---

**24.** *See* testimony of the following witnesses: Mark A. Peterson, Ph.D., Tr. at 411 & Exh.'s PP–A–159 & 160; Francine F. Rabinovitz, Ph.D. & Exh.'s PP–A–161 to 164; James Eden Hass, Tr. at 576 & Exh's PP–A–165 to 174.

sentatives, advisors, financial advisors, accountants and attorneys;

(c) any Entity that, pursuant to the Plan or after the Confirmation Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust, provided, however, that this subsection (c) shall not render an Entity a Protected Party solely by reason of such Entity's receipt of a transfer or distribution (i) pursuant to the Plan on account of a Claim or Interest or (ii) after the reorganization of the Debtors on account of a claim, demand or interest;

(d) any Entity that, pursuant to the Plan or after the Confirmation Date, makes a loan to the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust or to a successor to, or transferee of, any assets of the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust to the extent that liability is asserted to exist by reason of such lending relationship or to the extent any Lien created in connection with such a loan is sought to be challenged or impaired;

(e) as determined by this Court, any other Entity that is alleged to be co-liable with the Debtors and provides value to the Debtors or the Trust or any of the respective successors or assigns thereof; and

(f) each Settling Asbestos Insurance Company named in the Confirmation Order and each contributor of funds, proceeds or other consideration under a Predecessor Settlement Agreement, including Allied; provided, however, that except to the extent any of them qualify under subsection (f), Dana and Rapid–American are not Protected Parties.

169. The Released Parties are appropriate third parties, as that term is applied in Section 524(g)(4)(A)(ii) of the Bankruptcy Code, and consist of the following Entities: (a) the Debtors, Reorganized Celotex, Reorganized Carey Canada and the Consolidated Affiliates, any of their respective successors or assigns and each of their present and former directors, officers, agents, attorneys, accountants, financial advisors, investment bankers and employees, (b) the Official Com-

mittees, their members and representatives, and the Legal Representative, (c) the professionals or experts retained by any of the Debtors, the Official Committees or the Legal Representative, (d) the designated representative (as defined in Section 7.1 of the Settlement Agreement), (e) the Veil Piercing Claimants' Representative (as defined in the VPSA), (f) the Settling Asbestos Insurance Companies named in the Confirmation Order (but only to the extent such Settling Asbestos Insurance Companies specifically contracted (i) to obtain the benefits of the Supplemental Injunction or (ii) to be a Released Party), (g) the Jasper Parties and the Drummond Interests, and (h) each contributor of funds, proceeds or other consideration under a Predecessor Settlement Agreement, including Allied; provided, however, that except to the extent any of them qualify under subsection (h), Dana and Rapid–American are not Released Parties.

170. Identifying, in the Order Confirming the Plan and in these Findings and Conclusions, each Debtor or beneficiary of the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction, as applicable, in such Injunctions with respect to Demands is fair and equitable with respect to the persons that might subsequently assert Asbestos Claims or Demands against each such Debtor or beneficiary in light of the benefits provided, or to be provided, to the Trust on behalf of such Debtor or such beneficiary.

171. The contribution of the Veil Piercing Settlement Fund to the Trust is a benefit contributed on behalf of each of the VPSA Released Parties.

172. Each beneficiary of each of the Injunctions is, has been or may in the future be, by name or as part of an identifiable group, alleged to be directly or indirectly liable for Asbestos Claims against the Debtors by reason of the beneficiary's—

a. ownership of a financial interest in the Debtors, a past or present affiliate of the Debtors, or a predecessor in interest of the Debtors;

b. involvement in the management of the Debtors or a predecessor in interest of the Debtors, or service as an officer,

director or employee of the Debtors or a related party;

c. provision of insurance to the Debtors or a related party;

d. involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the Debtors or a related party, including but not limited to—

  i) involvement in providing financing (debt or equity), or advice to an Entity involved in such a transaction; or

  ii) acquiring or selling a financial interest in an Entity as part of such a transaction; or

e. other affiliation or relationship with one or both of the Debtors or a related party.

173. Each beneficiary of each of the Injunctions comes within the scope of and is covered, protected and benefitted by, the Injunctions.

174. The following Entities are Settling Asbestos Insurance Companies: The Aetna Casualty & Surety Company ("Aetna"), AIU Insurance Company, American Home Assurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Granite State Insurance Company, Employers Insurance of Wausau, The Travelers Insurance Company and the Travelers Indemnity Company (collectively, "Travelers"), Continental Casualty Company and Transportation Insurance Company.

175. The Legal Representative supports the Plan, has consented to the jurisdiction of the Court over him and his constituents for purposes of all matters relating to or affected by the Plan, and approves of the treatment provided to holders, both present and future, of Asbestos Personal Injury Claims, including, but not limited to, the issuance of the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction under the Plan.

176. As required by Section 4(e) of the VPSA, Celotex, JWC, the Asbestos Health Claimants Committee, the Asbestos Property Damage Claimants Committee, the Trade Creditors Committee and the Veil Piercing Claimants' Representatives have each used their respective best efforts to obtain confirmation of a Chapter 11 plan in the Celotex Chapter 11 case that includes a provision for an injunction pursuant to Section 524(g) of the Bankruptcy Code that shall apply to, cover, protect and benefit, *inter alia*, each and all of the VPSA Released Parties in his/her/its respective capacity as a VPSA Released Party, or an injunction acceptable to the VPSA Released Parties that provides for the same protections afforded by Section 524(g) of the Bankruptcy Code to such VPSA Released Parties.

### 8. General

177. For purposes of insurance and indemnification, the Bankruptcy Court relies on its opinion in *In re the Celotex Corporation*, 196 B.R. 973 (Bankr.M.D.Fla.1996):

(a) For any or all holders of Asbestos Personal Injury Claims, bodily injury is deemed to have occurred or arisen during any or all of the following periods (1) the time the holder was exposed to the relevant asbestos-containing material (the "ACM"); (2) when the holder's asbestos-related disease was reasonably capable of clinical detection and diagnosis; or (3) during any period that the holder suffered from a disordered, weakened or unsound condition before the clinical manifestation of the holder's asbestos-related disease.

(b) For holders of Asbestos Property Damage Claims, property damage is deemed to have occurred or arisen during any or all of the following periods (1) the installation of the relevant ACM in the applicable building; (2) a period when levels of asbestos fibers circulating in the interior of the applicable building exceed levels of asbestos found in the exterior ambient atmosphere; (3) a period when levels of asbestos fibers circulating in the applicable building's interior atmosphere exceed limits established by any Governmental Unit; (4) a period when levels of asbestos fibers circulating in the applicable building's atmosphere are such that the building's owner must develop and use a maintenance program to (a) ensure levels of asbestos fibers do not become potential health hazards, or (b) reduce levels below

governmental standards relating to asbestos fibers; (5) a period when the relevant ACM is present in a building and, through normal use and occupancy of such building, including its reasonable remodeling or renovation, applicable law requires the asbestos to be removed, abated or otherwise remedied; (6) a period when any relevant ACM installed in a building is disturbed, deteriorates, or is otherwise damaged through no fault of the building's owner, and such asbestos is required to be maintained, removed, abated, or otherwise remedied by applicable law; or (7) a period when any relevant ACM is required to be removed, abated or otherwise remedied to comply with existing applicable law. Nothing in the Plan, Trust, or these Findings of Fact and Conclusions of Law shall modify any of this Court's present or future rulings in the adversary proceeding.[25]

178. The testimony of the lay and expert witnesses presented by the Plan Proponents at the Confirmation Hearing was credible.

179. The declarations and affidavits presented by the Plan Proponents at the Confirmation Hearing provided adequate foundation and contained credible testimony.

180. Article 13 of the Plan sets forth the matters over which the Bankruptcy Court will retain jurisdiction.

181. Each of the conditions precedent to the entry of the Confirmation Order, as set forth in Article 8.1 of the Plan, has been satisfied.

### B. *Conclusions Of Law*

#### 1. Jurisdiction And Venue

182. The Bankruptcy Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(a) and (d), and the Order of the United States District Court dated July 11, 1984 (Hodges, J.) transferring and referring all cases pending under Title 11, United States Code, and all cases filed after July 11, 1984 under Title 11 or arising in or related to a case under Title 11 to the appropriate division of the Bankruptcy Court. The District Court has jurisdiction of this

matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Procedural Order.

183. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

184. The Confirmation Hearing was conducted and the Confirmation Order and these Findings and Conclusions are entered in accordance with the Procedural Order.

185. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). *See Celotex Corp. v. AIU Insurance Co. (In re Celotex Corp.),* 152 B.R. 667, 672–74 (Bankr.M.D.Fla. 1993).

186. The Chapter 11 cases have not been substantively consolidated and the Plan is not based on a substantive consolidation of the Chapter 11 cases.

187. The Debtors were and are qualified to be debtors under Section 109(a) of the Bankruptcy Code.

188. The Bankruptcy Court, through the District Court, has original and exclusive jurisdiction over all property of the Debtors' Estates and all property of the Debtors as of the commencement of the Reorganization Cases. Property of the Debtors' Estates includes, but is not limited to, the items set forth in the definitions of Trust Assets and Trust Causes of Action in Articles 1.144 and 1.145 of the Plan.

#### 2. Technical Modifications To The Plan

189. No party in interest objected to the Technical Modifications. The Technical Modifications: (a) comply with Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Sections 1122 and 1123 of the Bankruptcy Code and (b) do not adversely change the treatment under the Plan of any Claims or Interests. In light of the nature of the Technical Modifications, no additional disclosure under Section 1125(b) of the Bankruptcy Code is required. Accordingly, pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims and Interests that have

---

25. *See* Order Confirming Plan; Adv.Proc. No. 91–40.

accepted or are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, as amended by the Technical Modifications.[26]

### 3. Exemptions From Securities Laws

190. Pursuant to Section 1125(e) of the Bankruptcy Code, the Plan Proponents' transmittal of Plan solicitation packages, their solicitation of acceptances of the Plan and the issuance and distribution of Reorganized Celotex Common Stock, Reorganized Carey Canada Common Stock, the instruments constituting the Financial Accommodations and any other securities pursuant to the Plan, and Reorganized Celotex's and Reorganized Carey Canada's participation in such activities, are not and will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan of reorganization or the offer, issuance, sale or purchase of securities.

191. Pursuant to Section 1145(a)(1) of the Bankruptcy Code, the offering, issuance and distribution pursuant to the Plan of Reorganized Celotex Common Stock, Reorganized Carey Canada Common Stock, the instruments constituting the Financial Accommodations and any other distributions that may be deemed to be securities shall be exempt from Section 5 of the Securities Act and from any state or local law requiring registration, notification, qualification or exemption prior to the offering, issuance, distribution or sale of securities.

192. Pursuant to and to the fullest extent permitted by Sections 105 and 1145 of the Bankruptcy Code, the resale of any Reorganized Celotex Common Stock, Reorganized Carey Canada Common Stock, the instruments constituting the Financial Accommodations and any other Plan distributions that may be deemed to be securities shall be exempt from Section 5 of the Securities Act and any state or local law requiring registra-

tion prior to the offering, issuance, distribution or sale of securities.

### 4. Approval Of The Discharges, Releases And Injunctions Provided Under The Plan

193. The Court has the inherent constitutional and statutory power and authority to issue and enter the discharges, releases and injunctions (including, but not limited to, the Injunctions) contained in Article 10 of the Plan and in the Confirmation Order.[27]

■ 194. The Court has the power and authority to grant injunctive relief where there is a basis for concluding that reorganization or rehabilitation of the Debtors might be undermined or frustrated by the actions sought to be enjoined.

■ 195. The Court has the power and authority to prevent injustice or unfairness and has the power and authority to fashion equitable remedies where those at law are inadequate.

196. The Court has the power and authority to channel Asbestos Claims to the Trust and may limit the direct or indirect prosecution of such Asbestos Claims against the Debtors, any or all of the Released Parties and/or any or all of the Protected Parties, and prohibit any Entity from attempting to circumvent the Plan and the orders of the Court.

■ 197. In exercising its inherent equitable powers, the Court may grant injunctive relief to prevent direct or indirect interference with the administration of the Debtors' Estates and facilitate the Debtors' reorganization effort to enable the Debtors to achieve the ultimate objectives of Chapter 11 reorganization and rehabilitation. The Court may enjoin or otherwise limit future litigation associated with the Reorganization Cases which could undermine or frustrate the Plan or the Debtors' reorganization.

---

26. *See* Tr. at pp. 1267–1323.

27. *See In re A.H. Robins Co.* 88 B.R. 742, 754 (E.D.Va.1988), *aff'd sub nom. Menard–Sanford v. Mabey (In re A.H. Robins Co.* 880 F.2d 694 (4th Cir.1989) *cert. denied* 493 U.S. 959, 110 S.Ct.

376, 107 L.Ed.2d 362 (1989); *In re Johns–Manville Corp.,* 68 B.R. 618, 624–28 (Bankr.S.D.N.Y. 1986), *aff'd* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)* 843 F.2d 636 (2d Cir.1988).

198. The discharges, releases and injunctions, including the Injunctions, represent a total package of relief necessary to facilitate the Debtors' reorganization.

■ 199. Section 524(g) of the Bankruptcy Code provides a broad spectrum injunction that appropriately may be used to effectuate the Plan.

200. Pursuant to Sections 105, 524 and 1123(b)(3) of the Bankruptcy Code, the releases, discharges and injunctions (including, but not limited to, the Injunctions) set forth in the Plan and implemented by the Confirmation Order are an integral part of the Plan and are fair, equitable, reasonable and in the best interests of each of the Debtors and their Estates, Reorganized Celotex, Reorganized Carey Canada, the Trust and holders of Claims and Interests.

201. All releases, discharges and injunctions (including, but not limited to, the Injunctions) with respect to claims and causes of action against non-Debtor entities set forth in the Plan are inextricably intertwined, are approved pursuant to the Confirmation Order as an integral part of the Plan, are fair, equitable, reasonable and in the best interests of the Debtors and their Estates, Reorganized Celotex, Reorganized Carey Canada, the Trust and holders of claims, interests and demands (including holders of Claims and Interests) and are effective and binding on all Entities who may have had standing to assert such Claims or causes of action. No entity will possess such standing to assert such Claims or causes of action after the Effective Date.

202. The discharges in the Plan and the Confirmation Order shall have the fullest preclusive effect permitted by law, operate as an injunction against, among other things, the assertion of any Claim or Interest or the commencement of legal action or process against the Debtors, against the property of the Debtors, against the Trust or against property of the Trust; however, such injunction shall not impair the right, if any, of Entities with Asbestos Claims to assert such Asbestos Claims solely against the Trust in accordance with the Asbestos Claims Resolution Procedures.

203. Except as specifically provided in the Plan to the contrary, the satisfaction, release and discharge set forth in Article 10.1 of the Plan shall also operate as an injunction prohibiting and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from or offset (a) any Claim against or Interest in the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust by any Entity and (b) any cause of action, whether known or unknown, against the Released Parties or the VPSA Released Parties based on the same subject matter as any Claim or Interest described in subpart (a) of Article 10.2 of the Plan.

204. Any satisfaction, release, and discharge, along with any injunction, including the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction approved in the Confirmation Order, are critical to the Plan's feasibility.

### 5. Authorization Of Corporate Actions

205. Notwithstanding any contrary provisions of the business corporation or trust laws of any applicable Governmental Unit, no action of the respective directors, stockholders, Trustees or beneficiaries of the Debtors, Reorganized Celotex, Reorganized Carey Canada, or the Trust, as the case may be, shall be required to authorize the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust to (a) enter into, execute, deliver, file, adopt, amend or effectuate, as the case may be, the Plan and the Plan Documents, and following the Effective Date, each of the Plan Documents shall be a legal, valid and binding obligation of Reorganized Celotex, Reorganized Carey Canada and/or the Trust or other party thereto, enforceable against Reorganized Celotex, Reorganized Carey Canada, and/or the Trust or other party thereto, in accordance with and subject to their respective terms and conditions and (b) engage in any of the transactions or other actions contemplated by the Plan, the Plan Documents or the Confirmation Order (the "Plan Transactions") or in furtherance thereof, and the Plan Transactions are hereby deemed to have occurred and be effective as provided in the Plan and such activities are

hereby authorized and approved in all respects.

206. Prior to the Effective Date, in accordance with the terms of the Settlement Agreement, JWC is enjoined from claiming a worthless stock loss for the outstanding preferred and common stock of Celotex, and the provisions of IRC § 382(g)(4)(D) are not applicable to Celotex.

### 6. Adequacy Of Notice

207. Notice of, among other things, the Reorganization Cases, the General Claims Bar Date, the Asbestos Property Damage Bar Date, the Asbestos Personal Injury Bar Date, the hearing on the adequacy of the Disclosure Statement, the Plan, the Confirmation Hearing, and the Technical Modifications was reasonable, adequate and sufficient under the circumstances and provided creditors of the Debtors and parties in interest adequate notice of the relevant proceedings held herein and an opportunity to appear and be heard, as required by the Bankruptcy Code, the Bankruptcy Rules and applicable law. The appointment of the Legal Representative and his participation in the Reorganization Cases is sufficient to bind the holders of future Asbestos Claims under the Plan and affords such holders due process.

### 7. Compliance With The Requirements Of The Bankruptcy Code

208. The classification of Claims and Interests contained in Article 3 of the Plan complies with Section 1122(a) of the Bankruptcy Code. The classification of Claims and Interests in Celotex Classes 1 through 9 and Carey Canada Classes 1 through 9 is proper because each such class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within such class. Moreover, the separate classification of Claims and Interests in Celotex Classes 1 through 9 and Carey Canada Classes 1 through 9 is appropriate because such Claims and Interests have differing rights among each other and against the assets of the Debtors or differing interests in the Debtors or their reorganizations. There is a reasonable basis for the classification scheme established by the Plan.[28]

209. The Plan's designation of a separate class of Claims consisting only of every unsecured claim that is less than or voluntarily reduced to $2,500 complies with Section 1122(b) of the Bankruptcy Code.[29]

210. The designation of classes of Claims and Interests contained in Article 3 of the Plan is reasonable and necessary and complies with Section 1123(a)(1) of the Bankruptcy Code.

211. The contents of the Plan clearly establishes the Plan complies with Section 1123(a)(2) through 1123(a)(7) of the Bankruptcy Code.[30]

212. This Court finds the evidence and testimony at the confirmation hearing clearly establishes the Plan meets the requirements of Section 1129(a)(1) through 1129(a)(6) of the Bankruptcy Code.[31]

213. This Court's responsibility with respect to consideration of the Plan is to consider as a matter of law (i) whether the Plan Proponents have met their burden under the Bankruptcy Code, (ii) whether each impaired class has accepted the Plan and (iii) the merits of any timely filed objections to the Plan. The Court need not and ought not consider if a proposed plan is the "best" plan of reorganization that could be promulgated,

---

28. *See In re AOV Indus., Inc.,* 792 F.2d 1140, 1150–51 (D.C.Cir.1986); *In re MCorp Financial, Inc.,* 137 B.R. 219, 226–27 (Bankr.S.D.Tex.), *appeal dismissed,* 139 B.R. 820 (S.D.Tex.1992).

29. *See In re Jartran, Inc.,* 44 B.R. 331, 397 (Bankr.N.D.Ill.1984).

30. *See In re Texaco, Inc.,* 84 B.R. 889, 890–891 (Bankr.S.D.N.Y.), *appeal dismissed sub nom., Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.),* 92 B.R. 38 (S.D.N.Y.1988).

31. *See In re Texaco, Inc.,* 84 B.R. 889, 890–892 (Bankr.S.D.N.Y.), *appeal dismissed sub nom., Trans World Airlines, Inc. v. Texaco, Inc. (In re Texaco, Inc.),* 92 B.R. 38 (S.D.N.Y.1988).

The plan proponents bear the burden of proving the elements of 11 U.S.C. § 1129(a) by a preponderance of the evidence. *See In re MCorp Financial, Inc.,* 137 B.R. 219, 225 (Bankr. S.D.Tex.), *appeal dismissed,* 139 B.R. 820 (S.D.Tex.1992).

providing for the highest return to creditors of the Debtors' Estates. Instead, the Chapter 11 process is controlled by the various constituencies in a case, including holders of Claims and Interests. It is not the Bankruptcy Court's role to substitute its judgment for the judgment of the various classes of creditors who have voted overwhelmingly in favor of the Plan. Accordingly, the Bankruptcy Court is not required to compare the Plan to a hypothetical plan. Therefore, in order to meet their obligations under Section 1129(a)(7) of the Bankruptcy Code, the Plan Proponents must prove that the distribution to creditors under the Plan is no less valuable, as of the Effective Date of the Plan, than the distribution such creditors would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. The Plan Proponents are not required to prove that the distribution to creditors under the Plan is more favorable than in connection with a hypothetical plan or a hypothetical auction sale.[32]

214. The evidence and testimony at the confirmation hearing establish the Plan complies with Section 1129(a)(7) of the Bankruptcy Code. Celotex Classes 1, 2, 3, 5 and 7 and Carey Canada Classes 1, 2, 3, 5 and 7 are unimpaired and are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Celotex Classes 4, 6 and 8 and Carey Canada Classes 4, 6 and 8 are impaired and each such class has voted to accept the Plan in accordance with Section 1126(c) of the Bankruptcy Code. Celotex Class 9 and Carey Canada Class 9 are impaired and all holders of Interests in each such class have consented to their treatment under the Plan.

215. Based upon the liquidation analyses attached to the Disclosure Statement as Exhibits I and J and upon the evidence presented at the Confirmation Hearing, each holder of a Claim or Interest in each impaired class of Claims or Interests will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effec-

tive Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. Section 1111(b)(2) of the Bankruptcy Code does not apply to the Claims of any class, and no election pursuant to Section 1111(b)(2) has been made in the Reorganization Cases.

216. The evidence and testimony at the confirmation hearing establish the Plan complies with Section 1129(a)(8) of the Bankruptcy Code. Moreover, to the extent applicable with respect to Celotex Class 9 and Carey Canada Class 9, the Plan complies with Section 1129(b) of the Bankruptcy Code.

217. Similarly, the evidence and testimony at the confirmation hearing establish the Plan complies with Section 1129(a)(9) of the Bankruptcy Code in that the holder of a particular claim will receive treatment consistent with this Code section.

218. Section 1129(a)(10) of the Bankruptcy Code has been established by the evidence. As indicated in the Revised Ballot Tabulation Report submitted by the Claims Agent/Balloting Agent and the record of the Confirmation Hearing, Celotex Classes 4, 6 and 8 and Carey Canada Classes 4, 6 and 8 are impaired classes under the Plan that have accepted the Plan, determined without including any acceptance of the Plan by any insider.[33]

219. The evidence and testimony at the confirmation hearing establishes the · Plan complies with Section 1129(a)(11) through (a)(13) of the Bankruptcy Code.

220. The evidence and testimony at the confirmation hearing establishes any and all other applicable requirements of Sections 1123 and 1129 are met in the Plan.

221. The Plan Proponents have met their burden to introduce evidence which supports confirmation of the Plan. There remains no issue of law or fact, nor any objection, which would preclude confirmation of the Plan.

32. *See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters. Ltd., II (In re Briscoe Enters. Ltd., II),* 994 F.2d 1160, 1167–68 (5th Cir.), *cert. denied* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

33. *See* Exh. PP–A–198.

222. The evidence and testimony at the confirmation hearing establishes the Plan complies with Section 524(g) of the Bankruptcy Code.

223. The Bankruptcy Court and the District Court have the jurisdiction, power and authority, pursuant to, *inter alia*, Sections 105(a), 524 and 1141 of the Bankruptcy Code, to approve and enter the injunctions (including, but not limited to, the Discharge Injunction, the Supplemental Injunction, the Third Party Injunction and the VPSA Injunction) provided for in the Plan. All of the legal requirements for granting such injunctions, including, but not limited to, the requirements set forth in Section 524(g) of the Bankruptcy Code, have been met.

## 8. Implementation Of The Plan

224. The settlements provided for in the Plan are fair and equitable and in the best interests of holders of Claims and Interests and comport with public policy.

225. Except as provided in the Plan, the Debtors are discharged from liability for all Claims, including, but not limited to, all Asbestos Claims. Except as provided in the Plan, the property of each Estate is free from all such Claims.

226. The Court has the power under the principles of equity to disallow claims for punitive damages. The Trust cannot compensate holders of Asbestos Claims for punitive damages and still treat all similar Claims equitably. Consequently, payment of punitive damages would prevent the fair and equitable treatment of the holders of Asbestos Claims, would frustrate the fair distribution of the Trust Assets, and would subvert the stated purposes of the Plan and of public policy.[34] An Asbestos Claim liquidated pursuant to the Asbestos Claims Resolution Procedures shall be deemed an Allowed Claim for all purposes, including, but not limited to, Section 502 of the Bankruptcy Code.

227. The Asbestos Personal Injury Claims Resolution Procedures and the Asbestos Property Damage Claims Resolution Procedures are fair and reasonable and provide mechanisms for substantially similar treatment of the holders of Asbestos Claims.

228. The treatment provided by the Asbestos Property Damage Claims Resolution Procedures to the holders of Category 4 Claims (as defined in the Asbestos Property Damage Claims Resolution Procedures) is reasonable and appropriate and ensures the broadest sharing to claimants within that category. The Asbestos Property Damage Claims Resolution Procedures appropriately do not utilize a market share theory.

229. The provisions of the Plan and the Confirmation Order shall be binding on the Debtors, the Reorganized Debtors, all holders of Asbestos Claims, all holders of other Claims and Interests, any other Entity making an appearance either formally or otherwise, including attending the Confirmation Hearing in person or by counsel, in the Reorganization Cases (whether in person, by counsel or by the Legal Representative), any Entity having notice of the Reorganization Cases, whether or not such Entity made an appearance in the Reorganization Cases and any other Entity issuing securities, acquiring property under the Plan, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, beneficiaries, guardians, and similar officers or any Entity claiming through or in the right of any such Entity.

230. By virtue of various corporate transactions, Celotex has succeeded to all of Philip Carey's rights, if any, concerning the Dana Indemnification Rights.[35]

231. The Dana Indemnification rights are property of the Debtors' Estates. The Court has the power and jurisdiction to allow the Debtors to assign or otherwise transfer the Dana Indemnification Rights. Any assignee or other transferee of the Dana

**34.** *See In re Johns–Manville Corp.,* 68 B.R. 618, 627–28 (Bankr.S.D.N.Y.1986), *aff'd* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)* 843 F.2d 636 (2d Cir.1988).

**35.** *See* Exh.'s PP–A–99 to 117.

Indemnification Rights may take such action as they deem appropriate, including litigation with the respect to the Dana Indemnification Rights.

232. Celotex's indemnity and other rights against Dana (including, but not limited to, the Dana Liabilities), relating to Asbestos Claims or Asbestos Insurance Policies shall be preserved for prosecution subsequent to the Confirmation of the Plan, and such rights against Dana (including, but not limited to, the Dana Liabilities), if any, shall be deemed to be transferred to the Trust and shall be vested in the Trust, as of the Effective Date, as the representative of the Estate of Celotex, being appointed by the Court in accordance with Section 1123(b)(3) of the Bankruptcy Code without any further action by Celotex, Reorganized Celotex, the Trust or the Court. The Trust shall have the authority and obligation to afford to holders of Allowed Asbestos Claims whatever may be required to enable such holders to enforce the Trust's indemnity rights against Dana (including, but not limited to, the Dana Liabilities), which holders shall have the same authority granted to the Trust under Section 1123(b)(3) of the Bankruptcy Code. Such indemnity and other rights shall be so vested free and clear of all Liens, security interests and other Claims or causes of action, except as otherwise provided in the Plan.

233. The Plan and the Plan Transactions do not provide for, and, when consummated, will not constitute, the liquidation of all or substantially all of the property of the Estates of Celotex or Carey Canada within the meaning of Section 1141(d)(3) of the Bankruptcy Code. In addition, the Debtors will engage in business after consummation of the Plan within the meaning of Section 1141(d)(3) of the Bankruptcy Code. Moreover, the Debtors would not be denied a discharge under Section 727(a) of the Bankruptcy Code if the Reorganization Cases were cases under Chapter 7.

### 9. Matters Relating To Tax

234. After April 21, 1988 and prior to the Effective Date, there has not been and there will not be an ownership change of Celotex as defined in IRC § 382.[36]

235. The issuance of the Reorganized Celotex Common Stock to the Trust will result in an ownership change as defined in IRC § 382. Holders of Asbestos Claims, as beneficiaries of the Trust, will, for purposes of Section 382($l$)(5), be deemed to directly receive and own the Reorganized Celotex Common Stock, will be qualified creditors as defined in IRC § 382($l$)(5)(E) and the regulations issued thereunder and will be deemed to receive fifty percent or more of the Reorganized Celotex Common Stock as a result of being creditors of Celotex. IRC § 382($l$)(5) will therefore apply to the ownership change of Celotex and the limitations of IRC § 382(a) will not apply to the pre-change losses and other tax attributes of Celotex.

236. Pursuant to the terms of the Plan and the Trust Agreement, on the Effective Date, the Settlement Account shall constitute a trust account of the Trust which will not result in recognition of income by or deductions for Celotex, the Celotex Settlement Fund Recipient, or the Trust.

237. The receipt of Asbestos Insurance Action Recoveries by Celotex and the transfer by Celotex of the Asbestos Insurance Action Recoveries to the Trust will not result in recognition of income by and will not generate a deduction for Celotex. If Celotex were required to recognize income, it would be entitled to a corresponding offsetting deduction.

238. The deductions generated by Celotex on the transfer of Cash and other property, issuance of Reorganized Celotex Common Stock and payments of principal on the Financial Accommodations issued to the Trust will be "specified liability losses" as defined in IRC § 172(f), and therefore eligible to be carried back to each of the ten taxable years preceding the taxable year of such loss.

239. The projected total enterprise value of Reorganized Celotex as of August 31, 1997 is $550–650 million, as determined by Meadowcroft Associates Inc. Celotex will be entitled to a deduction for the issuance of the

---

36. *See* Aff. of Henry H. Miyares, Exh. PP–A–144; Exh.'S PP–A–146 & 147; Declaration of Steven E. Golden, Exh. PP–A–148; Exh.'S PP–A–149 & 150.

Reorganized Celotex Common Stock to the Trust in an amount equal to the fair market value of such stock as determined by a valuation methodology which takes into account the factors taken into account by Meadowcroft Associates Inc. in its valuation report.[37]

240. On the Effective Date and as a result of the implementation of the Plan, absent a deconsolidation arising due to other events occurring between the Confirmation Date and the Effective Date, Celotex will be deconsolidated from the Jasper consolidated group. The deductions generated by Celotex on the Effective Date from the transfer of Cash and other property and the issuance of the Reorganized Celotex Common Stock to the Trust is properly allocable to the portion of the Effective Date after the deconsolidation and will be consistently treated by Celotex and the Jasper consolidated group as occurring on the day after the Effective Date, when Celotex is no longer a member of the Jasper consolidated group, pursuant to Treas.Reg. § 1.1502–76(b)(1)(ii)(B).

### 10. Miscellaneous

241. Section 11.12 of the Plan provides as follows: "It shall be a condition precedent to the determination, allowance or payment of any Allowed Asbestos Claim, irrespective of the manner of resolution thereof, that any insurer or indemnitor from whom coverage, reimbursement or indemnitee is sought with respect to such Asbestos Claim has been tendered the opportunity to participate in the resolution and defense of such Asbestos Claim. The opportunity to participate in the resolution and defense of such Asbestos Claim shall be in all respects subject to the Claims Resolution Procedures provided for in the Trust Agreement and limited to contentions that the Claim should not be Allowed or should be Allowed in a lesser amount under such procedures." This Plan provision ensures a reasonable, fair and appropriate right to Asbestos Insurance Companies to participate in the allowance of Asbestos Claims by the Trust.

242. Nothing contained in these Findings and Conclusions, the Confirmation Order or the Plan shall alter or impair the rights of Asbestos Insurance Companies that are the subject of the Insurance Adversary Proceeding (as defined in the Confirmation Order).

243. The assignment of the Asbestos Insurance Actions, along with the rights and obligations of the Debtors, Reorganized Celotex and Reorganized Carey Canada under the Insurance Cooperation Agreements with respect to insurance for Asbestos Claims, to the Trust, shall give the Trust no greater, nor no lesser, rights under the Asbestos Insurance Policies than the Debtors, Reorganized Celotex or Reorganized Carey Canada may have, and the assignment of the Asbestos Insurance Actions to the Trust shall not impair, compromise or otherwise affect any rights or defenses that any of the Asbestos Insurance Companies may have under the Asbestos Insurance Policies or applicable law.[38]

244. The Supplemental Injunction, the Third Party Injunction or any other protection in favor of Aetna in (i) the Settlement Agreement and Mutual Release by and between Aetna and the Debtors dated as of November 22, 1996 (the "Aetna Settlement Agreement"), (ii) the Plan, (iii) the Order Granting Motion of the Debtors to Compromise and Settle Controversy Pursuant to Bankruptcy Rule 9019 entered on November 25, 1996, in connection with the Aetna Settlement Agreement (the "Aetna Compromise Order") or (iv) this Confirmation Order, shall not be applicable to a claim against Aetna (i) by an insured under the Policies (as defined in the Aetna Settlement Agreement), (ii) by another insurer for contribution, subrogation or indemnity, unless Aetna is precluded by the Plan or an order of the Bankruptcy Court from making a similar claim against such insurer or (iii) by Bradford White Corporation, but only with regard to its claim, if any, against Aetna (net of any applicable deductible) as set forth in Bradford White Corporation's Objection to Confirmation of

---

**37.** *See* testimony of Clifford L. Fitzgerald, Tr. at p. 505; Exh. PP–A–153.

**38.** *See* Aff. of James Marshall, Jr., Exh. PP–A–139 & Exh.'s PP–A–140, 141, 141A, & 143; Aff. of Henry H. Fishkind, Ph.D., Exh. PP–A–136 & Exh.'s PP–A–137, 137A, & 138.

Plan Proponents' and Property Damage Committee's Plans of Reorganization dated on or about September 26, 1996 and filed in the Reorganization Cases.

245. Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order shall operate to set a bar date for Administrative Claims (the "Administrative Claims Bar Date"), which bar date shall be the first Business Day that is at least sixty days after the Effective Date. Claimants holding Administrative Claims against the Debtors not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) will set forth such date and constitute notice of the Administrative Claims Bar Date. The Plan Proponents and any other party in interest will have ninety days after the Administrative Claims Bar Date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court, provided that such ninety day period of review may be extended by the Bankruptcy Court upon the request of any of the Plan Proponents.

246. The Bankruptcy Court retains jurisdiction over the matters set forth in Article 13 of the Plan and the Confirmation Order.

247. The Confirmation Order shall be a binding judgment with respect to all proceedings in other courts, state and federal. Constitutional authority is vested in Congress "to establish ... Uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 3. Owing to the Supremacy Clause of the United States Constitution, whatever decisions the Court has reached in the exercise of its federal question jurisdiction must prevail over contrary results that would be reached if a federal court were functioning essentially as a state court in the exercise of diversity jurisdiction.

ORDERED, ADJUDGED AND DECREED.

## ORDER CONFIRMING THE PLAN OF REORGANIZATION FOR THE CELOTEX CORPORATION AND CAREY CANADA, INC.

The Confirmation Hearing[1] to consider confirmation of the Plan commenced on November 18, 1996 and concluded on December 5, 1996. The Court has considered (i) all of the testimony presented and evidence admitted at the Confirmation Hearing; (ii) the papers and pleadings on file in the Reorganization Cases, including, but not limited to, any adversary proceedings relating to the Reorganization Cases and (iii) the law of the case. Following the Confirmation Hearing and in conjunction with this Order, the Court entered its Findings and Conclusions.

Based upon the foregoing and the Findings and Conclusions, along with all other rulings by this Court made in connection with the Confirmation Hearing, it is hereby ORDERED:

### A. *General Decrees And Implementation*

1. The Plan is hereby confirmed in its entirety, and each and every provision contained therein is hereby approved in its entirety.

2. All objections to Confirmation of the Plan, other than those withdrawn in writing prior to, or on the record at, the Confirmation Hearing, and other than those in respect of which the Bankruptcy Court made rulings during the Confirmation Hearing, are overruled.

The Court overrules the objection of Rapid–American specifically based on the following grounds. Notwithstanding Rapid–

---

1. Capitalized terms used in this Order shall have the meanings ascribed to them in the Plan, unless otherwise indicated or defined in the accompanying Findings Of Fact And Conclusions Of Law Regarding The Modified Joint Plan Of Reorganization Under Chapter 11 Of The United States Bankruptcy Code For The Celotex Corporation And Carey Canada Inc. (the "Findings and Conclusions") or herein. Any capitalized term used in this Order that is not defined herein, in the Findings and Conclusions or in the Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Such meanings shall be equally applicable to both the singular and the plural forms of such terms.

American's argument regarding the unfair treatment of its claim under the Plan, all the evidence introduced by Plan Proponents at the confirmation hearing establishes the Plan meets the best interest of creditors requirement under 11 U.S.C. § 1129(a)(7). Further, the Court finds treatment of Rapid–American as a codebtor under the provisions of 11 U.S.C. §§ 502, 509, & 510 is appropriate. The Court adopts the reasoning of *In re Amatex Corp.,* 110 B.R. 168 (Bankr.E.D.Pa.1990), in its entirety to support this decision.[2]

3. Consistent with the Plan, the following agreements and documents, and all amendments, modifications and supplements thereto (which agreements and documents shall be substantially in the respective forms attached as Exhibits to the Plan), including, without limitation, all annexes, exhibits and schedules thereto, and all terms and conditions thereof, are hereby approved:

| Exhibit | Name of Document |
| --- | --- |
| 1. | Asbestos Settlement Trust Agreement |
| 2. | Executory Contracts and Unexpired Leases Assumed by the Debtors |
| 3. | Restated Certificate of Incorporation of The Celotex Corporation |
| 4. | Bylaws of The Celotex Corporation |
| 7. | Celotex Long–Term Incentive Plan |
| 9. | Job Elimination Allowance Plan |
| 10. | Celotex Supplemental Retirement Plan |
| 12. | Claims Agreement |

4. Consistent with the Plan, the following agreements and documents, and all amendments, modifications and supplements thereto (which agreements and documents shall be substantially in the respective forms admitted into evidence at the Confirmation Hearing), including, without limitation, all annexes, exhibits and schedules thereto, and all terms and conditions thereof, are hereby approved:

| Exhibit | Name of Document |
| --- | --- |
| PP–A–179 | Insurance Cooperation Agreement |
| PP–A–180 | JWC Stock Purchase Agreement |
| PP–A–181 | Asset Purchase Agreement Between The Celotex Corporation and Center for Applied Engineering, Inc. |
| PP–A–182 | Asset Purchase Agreement Between The Celotex Corporation and Jim Walter Corporation |
| PP–A–183 | Asset Purchase Agreement Between The Celotex Corporation and Jim Walter International Corporation |
| PP–A–184 | Promissory Note ($50 million) and Promissory Note ($150 million) |
| PP–A–185 | Tax Cooperation and Indemnification Agreement |
| PP–A–186 | Agreement Regarding Disputed Claims |
| PP–A–187 | Executive Employment Agreement |
| PP–A–188 | Executive Severance Agreement |
| PP–A–189 | Agreement |

5. All authorized transactions effected by the Debtors during the period from the Petition Date through and including the Effective Date are hereby approved, ratified and confirmed.

6. The Debtors, Reorganized Celotex, Reorganized Carey Canada, the Trust, and their respective officers, directors, Trustees, agents, representatives, and attorneys, and each other Entity having duties or responsibilities under the Plan or this Order (collectively, the "Implementing Parties") are hereby authorized and empowered to carry out all of the provisions of the Plan and this Order. The Implementing Parties are authorized and empowered to, among other things: issue, execute, deliver, file, or record, as appropriate, the Plan Documents; take any action contemplated by the Plan or this Order; and issue, execute, deliver, file, or record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and perform such other acts, as they deem consistent with and necessary or appropriate to implement, effectuate and consummate the Plan and this Order and the transactions contemplated thereby and hereby, including, but not limited to, the Plan Transactions, all without further application to, or order of, the Court or further action by their respective directors, stockholders, Trustees or beneficiaries, and with like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, Trustees or beneficiaries of such Entities. The Secretary or any Assistant Secretary of each Debtor, Reorganized Celotex and Reorganized Carey Canada is authorized to certify or attest to any of the foregoing actions.

7. The Implementing Parties are further hereby authorized and empowered to (a) cause to be filed with the Secretary of State or other applicable officials of any applicable Governmental Units any and all certificates, agreements, or plans of merger, dissolution, liquidation, or amendment consistent with

---

**2.** *See* 3 David G. Epstein, et al., Bankruptcy § 11–4, at 82 (1992); 1 Robert E. Ginsberg & Robert D. Martin, Bankruptcy: Text, Statutes, Rules § 10.08[m] (3d ed. 1992).

and necessary or appropriate to implement the Plan Transactions, the Plan Documents and this Order and (b) amend and restate certificates or articles of incorporation, letters patent and by-laws or certificates or articles of amendment and take all such other actions, filings, or cause recordings to be made, as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such Implementing Party to so act. This Order constitutes all authority, if any, required by the General Corporation Law of the State of Delaware or the Province of Quebec, as applicable, and all other applicable business corporation, trust, and other laws of the applicable Governmental Units with respect to the implementation and consummation of the Plan.

8. The Implementing Parties are hereby authorized and empowered to execute and deliver, and the initial Trustees are hereby authorized and empowered to execute and receive, the Trust Agreement and the Trust Documents.

9. All matters provided for under the Plan involving the corporate structure of the Debtors, Reorganized Celotex or Reorganized Carey Canada, or any corporate action to be taken by, or required of the Debtors, Reorganized Celotex or Reorganized Carey Canada, shall be deemed to have occurred and be effective as provided in the Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any of such entities. Upon the Confirmation Date, and until the Trust as shareholder shall have elected members of the board of directors of Reorganized Celotex, the board of directors of Celotex shall be composed of three directors. These three directors of Celotex upon the Confirmation Date shall be Dennis M. Ross, Walter F. Johnsey and William B. Long. Mr. Ross, Mr. Johnsey and Mr. Long shall serve until replaced by order of the Bankruptcy Court, shareholder action or the election of a board of directors by the Trust as shareholder, whichever is first.

Further, the shareholder(s) of Celotex and the Plan Proponents may agree prior to the Effective Date that Jasper will elect Mr. Ross as the sole director to serve until replaced by order of the Bankruptcy Court or the election of a board of directors by the Trust, whichever is first. The corporate charter and bylaws of Celotex shall be amended to permit the board of directors to be composed of a sole director as soon as practicable following the Confirmation Date. Also upon the Confirmation Date, and until the Trust as shareholder shall have elected members of the board of directors of Reorganized Carey Canada, the board of directors of Carey Canada shall be composed of two directors. These two directors of Carey Canada upon the Confirmation Date shall be Jean Paul Bolduc and Jacques Plante. Mr. Bolduc and Mr. Plante shall serve until replaced by order of the Bankruptcy Court or the election of a board of directors by the Trust as shareholder, whichever is first.

10. Except as otherwise expressly provided in the Plan, effective on the Effective Date, Reorganized Celotex and Reorganized Carey Canada shall each be vested with all of the assets and property of their respective former Estate, free and clear of all Claims, Liens, charges and other interests of holders of Claims or Interests and may each operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

11. Except for those actions which may be compromised and settled or transferred to the Trust pursuant to the Plan and this Order, all actions by either or both of the Debtors shall be preserved and retained by the respective Debtors for enforcement subsequent to the Confirmation of the Plan, and on the Effective Date, such actions shall be assigned to, and vested in, the applicable Reorganized Debtor, which shall be deemed to be a "representative" of the Estates of Celotex or Carey Canada as the case may be, without any further action by the Debtors, Reorganized Celotex, Reorganized Carey Canada, the Trust or the Court.

12. Pursuant to Section 1146(c) of the Bankruptcy Code: (a) the issuance, distribution, transfer or exchange of Reorganized

Celotex Common Stock and Reorganized Carey Canada Common Stock; (b) the creation, modification, assignment, consolidation, filing or recording of any mortgage, deed of trust, security agreement or similar instrument; (c) the securing of additional indebtedness by such means or by other means or the additional securing of existing indebtedness by such means or by other means (whether in connection with the execution and delivery of the Trust Agreement, the Financial Accommodations or otherwise, in furtherance of, or in connection with, the Plan); (d) the creation, modification, assignment, delivery, filing or recording of any lease or sublease; or (e) the creation, modification, assignment, delivery, filing or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, any other agreements or certificates of merger, consolidation, dissolution or liquidation, deeds, bills of sale, assignments or other instruments of transfer executed in connection with the Plan or this Order, or any transactions arising out of, contemplated by or in any way related to the foregoing, whether occurring on or after the Effective Date, shall not be subject to any document recording tax, stamp tax or stamp act, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or any other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such taxes or governmental assessments and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such taxes or governmental assessments.

## B. *The Trust*

13. On the Confirmation Date, the Trust shall be established in accordance with the Trust Documents. On the Effective Date, all Trust Assets shall be, automatically and without further act or deed, transferred to, vested in and assumed by the Trust, subject to the notification requirements contained in Articles 11.6, 11.7, 11.8 and 11.9 of the Plan; provided, however, that to the extent that certain Trust Assets, because of their nature

or because they will accrue subsequent to the Effective Date, cannot be transferred to, vested in and assumed by the Trust on the Effective Date, such Trust Assets shall be, automatically and without further act or deed, transferred to, vested in and assumed by the Trust as soon as practicable after the Effective Date; and, further provided, that the common stock or assets of JWC and the other Consolidated Affiliates will be transferred pursuant to the terms of the JWC Stock Purchase Agreement or any applicable Affiliate Asset Purchase Agreement. The Trust and the Trustees are hereby authorized and empowered to receive the Trust Assets.

14. The Trust shall assume sole responsibility and liability for all Asbestos Claims, including, but not limited to, Indirect Asbestos Claims, against the Debtors, Reorganized Celotex, Reorganized Carey Canada and their respective Estates, Affiliates and subsidiaries and such Claims shall be liabilities solely of the Trust and shall be paid solely by the Trust.

15. No Entity shall be permitted to execute against or receive distributions from the Trust except in accordance with the terms of the Trust Documents and the Plan.

16. Except as otherwise expressly provided in the Plan and this Order, the transfer to, vesting in and assumption by the Trust of the Trust Assets as contemplated by the Plan and this Order shall discharge, release and extinguish all obligations and liabilities of the Released Parties and their respective estates, affiliates and subsidiaries, for or in respect of all Asbestos Claims, including, but not limited to, all Indirect Asbestos Claims, against the Debtors, Reorganized Celotex, Reorganized Carey Canada and their respective Estates, Affiliates and subsidiaries.

17. The appointment of the initial Trustees of the Trust and the initial members of the Trust Advisory Committee and the PD Advisory Committee, as well as the Property Damage Claims Administrator, the Legal Representative, and the Representative Indirect Asbestos Claimant, as of the Confirmation Date, shall be, and hereby is, approved. Each Trustee, the Trust Advisory Commit-

tee, the PD Advisory Committee, the Property Damage Claims Administrator, the Legal Representative and the Representative Indirect Asbestos Claimant shall be, and hereby is deemed to be, a "party in interest" on and after the Effective Date within the meaning of Section 1109(b) of the Bankruptcy Code.

18. After the Effective Date, the rights, duties and responsibilities of the Legal Representative shall be as set forth in the Trust Agreement.

19. The Trust shall pay all Trust Expenses. Neither the Plan Proponents, Reorganized Celotex nor Reorganized Carey Canada shall have any obligation to pay any Trust Expenses.

20. As of such date subsequent to the Effective Date on which the Trustees shall confirm in writing that the Trust is in a position to assume such responsibility, the Trust is authorized and empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any asset, liability or responsibility of the Trust, including Asbestos Insurance Actions, Supersedeas Bond Actions, Indirect Asbestos Claims, actions with respect to Wellington Claims and actions against Dana, Allied or Rapid–American. The Trust is authorized and empowered to initiate, prosecute, defend and resolve all such actions in the name of Celotex or Carey Canada if deemed necessary or appropriate by the Trust.

21. The transfer of the Dana Indemnification Rights as described in Section 11.8 of the Plan and in Section IV.A.20 of the Asbestos Property Damage Claims Resolution Procedures is approved and authorized. However, in no way is this transfer a determination of any rights under said indemnification agreement.

22. The Debtors' and the Released Parties' discharge and release from all Claims as provided herein shall neither diminish nor impair the enforceability of any of the Asbestos Insurance Policies or the indemnity and other rights against Dana. The Trust is, and shall be deemed to be, for all purposes, including, but not limited to, for purposes of insurance and indemnity, the successor to Celotex and Carey Canada in respect of As-

bestos Claims. An Allowed Asbestos Claim shall be, and be deemed to be, a judgment against the Trust (as successor for all purposes to the liabilities of Celotex and Carey Canada in respect of Asbestos Claims) in the Allowed Amount of such Allowed Asbestos Claim.

### C. *Discharge, Releases And Injunctions*

#### 1. **The Discharge**

23. Except as otherwise expressly provided in the Plan, on the Effective Date, Confirmation shall (a) discharge the Debtors, Reorganized Celotex, Reorganized Carey Canada and the Trust from any and all Claims including any Claim of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based on such Claim was filed or deemed filed under Section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of either Debtor, (ii) such Claim is or was Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of such Claim has voted on or accepted the Plan and (b) terminate all rights and interests of holders of Interests in respect of the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust. Except as otherwise expressly provided in the Plan to the contrary, the rights that are provided in the Plan shall be in complete settlement, satisfaction, release and discharge of and shall terminate and extinguish (x) all Claims against, Liens on and Interests in the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust or the assets and properties of the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust, (y) all causes of action, whether known or unknown, either directly or derivatively through the Debtors, Reorganized Celotex or Reorganized Carey Canada against the Released Parties or the VPSA Released Parties based on the same subject matter as any of the Claims, Liens or Interests described in subpart (x) of Article 10.1 of the Plan and (z) all claims and causes of action of the Debtors, Reorganized Celotex and Reorganized Carey Canada, whether known or unknown, against the Released Parties and the VPSA Released Parties. Except as otherwise expressly pro-

vided in the Plan, any Entity accepting any distributions or rights pursuant to the Plan shall be presumed conclusively to have released the Released Parties and the VPSA Released Parties from any cause of action based on the same subject matter as the Claim or Interest on which the distribution or right is received.

24. Except as otherwise expressly provided in the Plan to the contrary, the satisfaction, release and discharge set forth in Article 10.1 of the Plan shall also operate as an injunction prohibiting and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from or offset (a) any Claim against or Interest in the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust by any Entity and (b) any cause of action, whether known or unknown, against the Released Parties or the VPSA Released Parties based on the same subject matter as any Claim or Interest described in subpart (a) of Article 10.2 of the Plan and subpart (a) of this paragraph.

25. On and after the Effective Date, the Debtors shall be fully and finally discharged of any liability or obligation on a disallowed Claim or a disallowed Interest, and any order creating a disallowed Claim or a disallowed Interest which is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. This Order, except as otherwise expressly provided herein, shall constitute an order: (a) disallowing all Claims (other than Asbestos Claims) and Interests to the extent such Claims and Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Interests, and Claims for unmatured interest and (b) except as the Trust Documents may otherwise expressly provide with respect to Bonded Asbestos Personal Injury Claims, disallowing or subordinating, as the case may be, any Claims for penalties or punitive damages or any other damages not constituting compensatory damages.

## 2. The Supplemental Injunction

26. In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement the injunctive effect of the discharge provided by the Bankruptcy Code and the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Court under Sections 524(g) and 105(a) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action (including, but not limited to, any Asbestos Claim, or any claim or demand for or respecting any Trust Expense) against the Released Parties (or any of them) based upon, relating to, arising out of, or in any way connected with any Claim, whenever and wherever arising or asserted (including, but not limited to, all thereof in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty) or Interest shall be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction or recovery with respect to any such claim, demand, cause of action or Interest, including, but not limited to:

(a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim, demand, cause of action or Interest against any of the Released Parties, or against the property of any Released Party with respect to any such claim, demand, cause of action or Interest;

(b) enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or against the property of any Released Party with respect to any such claim, demand, cause of action or Interest;

(c) creating, perfecting or enforcing any Lien of any kind against any Released Party or the property of any Released Party with respect to any such claim, demand, cause of action or Interest;

(d) except as otherwise expressly provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due any Released Party or against the property of any Released Party with respect to any such claim, demand, cause of action or Interest; and

(e) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents or the Trust Documents relating to such claim, demand, cause of action or Interest.

27. Released Party means each of (a) the Debtors, Reorganized Celotex, Reorganized Carey Canada and the Consolidated Affiliates, any of their respective successors or assigns and each of their present and former directors, officers, agents, attorneys, accountants, financial advisors, investment bankers and employees, (b) the Official Committees, their members and representatives, and the Legal Representative, (c) the professionals or experts retained by any of the Debtors, the Official Committees or the Legal Representative, (d) the designated representative (as defined in Section 7.1 of the Settlement Agreement), (e) the Veil Piercing Claimants' Representative (as defined in the VPSA), (f) the Settling Asbestos Insurance Companies named in this Order (but only to the extent such Settling Asbestos Insurance Companies specifically contracted (i) to obtain the benefits of the Supplemental Injunction or (ii) to be a Released Party), (g) the Jasper Parties and the Drummond Interests and (h) each contributor of funds, proceeds or other consideration under a Predecessor Settlement Agreement, including Allied; provided, however, that except to the extent any of them qualify under subsection (h), Dana and Rapid–American are not Released Parties. The Settling Asbestos Insurance Companies are identified in paragraph 32 of this Order.

28. Notwithstanding anything to the contrary, the Supplemental Injunction shall not impair:

(a) the rights of Entities to assert any claim (including, but not limited to, any Claim), demand, debt, obligation or liability against (i) Dana, or (ii) Rapid–American;

(b) the rights of Entities to the treatment accorded them under Articles 2 and 4 of the Plan, as applicable, including the rights of Entities with Asbestos Claims to assert such Asbestos Claims solely against the Trust in accordance with the Asbestos Claims Resolution Procedures;

(c) the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust;

(d) the rights of the Trust, Reorganized Celotex or Reorganized Carey Canada to prosecute any Asbestos Insurance Action;

(e) the rights of the Bond Sureties/Insurers set forth in Articles 5.2 and 11.7 of the Plan; or

(f) the rights of Entities to assert any Claim, debt, obligation or liability for payment against an Asbestos Insurance Company that is not a Released Party unless otherwise enjoined by order of the Court.

### 3. The Third Party Injunction

29. In order to preserve and promote the settlements contemplated by and provided for in the Plan and agreements previously approved by the Bankruptcy Court and pursuant to the exercise of the equitable jurisdiction and power of the Court under Sections 524(g) and 105(a) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim or demand (including, but not limited to, any Asbestos Claim, or any claim or demand for or respecting any Trust Expense), against the Protected Parties (or any one of them) based upon, relating to, arising out of, or in any way connected with any Asbestos Claim (a "Third Party Claim") shall be permanently stayed, restrained and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such Third Party Claim, including, but not limited to:

(a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Third Party

Claim against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;

(b) enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;

(c) creating, perfecting or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any such Third Party Claim;

(d) commencing any action or other proceeding of any kind or enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order, with respect to any such Third Party Claim against a Protected Party that pursuant to the Plan or after the Confirmation Date makes a loan to any of the Released Parties, or creating, perfecting, enforcing, attaching, recovering, upsetting or impairing any Lien made in connection with such loan by reason of any such Third Party Claim;

(e) except as otherwise expressly provided in the Plan, asserting or accomplishing any setoff, right of subrogation or contribution or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim; and

(f) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents or the Trust Documents relating to such Third Party Claim.

30. Protected Party means any of the following parties:

(a) the Debtors, Reorganized Celotex, Reorganized Carey Canada, the Consolidated Affiliates, the Official Committees and the Legal Representative, and any of their post-Confirmation Date officers, directors, agents, employees, members, representatives, advisors, financial advisors, accountants and attorneys;

(b) the Trust, and any of its Trustees, officers, directors, agents, employees, representatives, advisors, financial advisors, accountants and attorneys;

(c) any Entity that, pursuant to the Plan or after the Confirmation Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust, provided, however, that this subsection (c) shall not render an Entity a Protected Party solely by reason of such Entity's receipt of a transfer or distribution (i) pursuant to the Plan on account of a Claim or Interest or (ii) after the reorganization of the Debtors on account of a claim, demand or interest;

(d) any Entity that, pursuant to the Plan or after the Confirmation Date, makes a loan to the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust or to a successor to, or transferee of, any assets of the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust to the extent that liability is asserted to exist by reason of such lending relationship or to the extent any Lien created in connection with such a loan is sought to be challenged or impaired;

(e) as determined by this Court, any other Entity that is alleged to be co-liable with the Debtors and provides value to the Debtors or the Trust or any of the respective successors or assigns thereof; and

(f) each Settling Asbestos Insurance Company named in this Order and each contributor of funds, proceeds or other consideration under a Predecessor Settlement Agreement, including Allied; provided, however, except to the extent any of them qualify under this subsection—subsection (f)—Dana and Rapid–American are not Protected Parties.

31. Notwithstanding anything to the contrary stated herein, the Third Party Injunction shall not impair:

(a) the rights of Entities to assert any claim (including, but not limited to, any Claim), demand, debt, obligation or liability against (i) Dana or (ii) Rapid–American, except to the extent that such entity has executed and performed under a Predecessor Settlement Agreement;

(b) the rights of Entities with Asbestos Claims to assert such Asbestos Claims solely against the Trust in accordance with the Asbestos Claims Resolution Procedures;

(c) the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust;

(d) the rights of the Trust, Reorganized Celotex or Reorganized Carey Canada to prosecute any Asbestos Insurance Action;

(e) the rights of the Bond Sureties/Insurers set forth in Articles 5.2 and 11.7 of the Plan; or

(f) the rights of Entities to assert any Claim, debt, obligation or liability for payment against an Asbestos Insurance Company that is not a Protected Party unless otherwise enjoined by order of the Court.

32. The following Entities are Settling Asbestos Insurance Companies: The Aetna Casualty & Surety Company ("Aetna"), AIU Insurance Company, American Home Assurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Granite State Insurance Company, Employers Insurance of Wausau, The Travelers Insurance Company and The Travelers Indemnity Company (collectively, "Travelers"), Continental Casualty Company and Transportation Insurance Company.

33. Each of the injunctions (including, but not limited to, the Injunctions) entered in favor of a Settling Asbestos Insurance Company by this Order is strictly limited in scope to those matters expressly resolved by the settlement agreement involving the Debtors and such insurer. Under no circumstances shall the Plan or this Order modify these settlement agreements.

### 4. The Veil Piercing Settlement Injunction

34. In order to preserve and promote the settlements contemplated by and provided for in the Plan, including the VPSA, and pursuant to the VPSA and the exercise of the equitable jurisdiction and power of the Court under Sections 524(g) and 105(a) of the Bankruptcy Code, this Order shall:

(a) enjoin forever all Entities from taking any legal action against any of the VPSA Released Parties for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery with respect to any Claim or Interest addressed by the Plan, including without limitation, any Asbestos Claim;

(b) bar forever any action against any of the VPSA Released Parties which alleges or seeks in any way to establish that such VPSA Released Party is directly or indirectly liable for Claims (including, without limitation, Asbestos Claims) against any of the Debtors by reason of such VPSA Released Party's:

(i) ownership of a financial interest in a Debtor, in a past or present Affiliate of a Debtor or in a predecessor in interest of a Debtor;

(ii) involvement in the management of a Debtor, of a past or present Affiliate of a Debtor or of a predecessor in interest of a Debtor;

(iii) service as an officer, director or employee of a Debtor, of a past or present Affiliate of a Debtor or of a predecessor in interest of a Debtor;

(iv) provision of insurance to a Debtor; or

(v) involvement in a transaction changing the corporate structure of, or in a loan, dividend, spinoff, acquisition, disposition or other financial transaction affecting the financial condition of, a Debtor or a "related party" (as defined in Section 524(g)(4)(A)(iii) of the Bankruptcy Code) of a Debtor, including, but not limited to, involvement in providing financing (debt or equity) or advice to an Entity involved in such a transaction, or acquiring or selling a financial interest in an Entity as part of such a transaction; and

(c) direct that all Asbestos Claims shall be forever channeled to and enforceable solely against the Trust.

35. VPSA Released Parties means those Entities listed in Part X of Appendix A of the VPSA.

36. Notwithstanding anything to the contrary stated herein, the Veil Piercing Settlement Injunction shall not impair:

(a) the rights of Entities to assert any claim (including, but not limited to, any Claim), demand, debt, obligation or liability against (i) Dana or (ii) Rapid–American, except to the extent that such entity has executed and performed under a Predecessor Settlement Agreement;

(b) the rights of Entities with Asbestos Claims to assert such Asbestos Claims solely against the Trust in accordance with the Asbestos Claims Resolution Procedures;

(c) the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust;

(d) the rights of the Trust, Reorganized Celotex or Reorganized Carey Canada to prosecute any Asbestos Insurance Action; or

(e) the rights of the Bond Sureties/Insurers as set forth in the Plan, including Articles 5.2 and 11.7 of the Plan.

### 5. Continuation Of Prior Stays And Injunctions

37. All of the injunctions and/or automatic stays provided for in or in connection with the Reorganization Cases, whether pursuant to Section 105, Section 362 or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to Confirmation shall remain in full force and effect until the Injunctions become effective, and thereafter if so provided by the Plan, this Order or by their own terms. Those injunctions contained in orders of the Bankruptcy Court approving settlements involving the Debtors and their insurance carriers prior to Confirmation shall continue in effect after Confirmation. These injunctions include the injunction contained in the order approving the settlement involving the Debtors and American Motorists Insurance Co. and Lumbermen's Mutual Casualty Co. entered on September 29, 1993, the injunction contained in the order approving the settlement involving the Debtors and Continental Casualty Company, Columbia Casualty Company and Transportation Insurance Company entered on August 17, 1995 and the injunction contained in the order approving the settlement involving the Debtors and AIU

Insurance Company, American Home Assurance Company, Granite State Insurance Company, Lexington Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA entered on January 30, 1996. In addition, on and after Confirmation, the Plan Proponents may seek such further orders as they may deem necessary to preserve the status quo during the time between Confirmation and the Effective Date.

38. The Discharge Injunction, the VPSA Injunction, the Third Party Injunction and the Supplemental Injunction shall become effective on the Effective Date and shall continue in effect at all times thereafter.

39. Notwithstanding anything to the contrary contained in the Plan, all actions in the nature of those to be enjoined by the Injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

### 6. Continuation Of The Supersedeas Bond Injunction

40. In order to preserve the Debtors' and the Trust's ability to obtain effective relief in connection with the avoidance and other claims that the Debtors have asserted in the Supersedeas Bond Adversary Proceeding, all outstanding injunctions entered by the Bankruptcy Court, pursuant to Section 105 of the Bankruptcy Code or otherwise, enjoining holders of Bonded Claims from seeking to proceed against any supersedeas bonds securing judgments against the Debtors or against any Bond Sureties/Insurers that provided or obtained such supersedeas bonds, except as otherwise expressly provided herein and except those as to which the Debtors, the Trustees and the holder of the applicable Bonded Claim shall have agreed otherwise with Bankruptcy Court approval, shall remain in full force and effect after the Confirmation Date; provided, however, that the Bankruptcy Court shall have authority by Final Order to vacate or modify any such injunction, except any permanent injunction entered by Final Order. The Order Granting Debtors' Motion for Order Authorizing and Directing Transfer of Released Bond Proceeds to the Debtors by the Sureties,

entered by the Bankruptcy Court and dated October 21, 1992, subject to further order of the Bankruptcy Court, shall remain in full force and effect after the Confirmation Date.

### 7. Injunction Regarding Insurance Adversary Proceeding

41. For the purpose of protecting the Bankruptcy Court's jurisdiction to determine the issues which are the subject of *The Celotex Corporation v. AIU Insurance Company, et al.,* Adv.Proc. 91–40 (the "Insurance Adversary Proceeding"), an injunction (the "Jurisdictional Injunction") is hereby entered pursuant to Section 105 of the Bankruptcy Code enjoining all Entities from instituting any action against those insurers who remain active defendants in the Insurance Adversary Proceeding which seeks coverage for Asbestos Claims which are the subject of the Insurance Adversary Proceeding with respect to such insurer. It is contemplated that the Jurisdictional Injunction will be terminated at the request of any Entity as to a particular insurer when the Bankruptcy Court has entered a Final Order in the Insurance Adversary Proceeding with respect to the coverage issues involving such insurer. In addition, any Entity may apply to the Bankruptcy Court to vacate the Jurisdictional Injunction as to any insurer at an earlier date for cause shown. The Jurisdictional Injunction is in addition to those set forth herein and it is limited to the scope set forth in this paragraph. Further, nothing in the Plan, Trust, or this Order shall modify any of this Court's present or future rulings in the adversary proceeding. *See* Adv.Proc. No. 91–40.

### 8. The Jasper Releases

42. On the Effective Date, the Affiliate Action and the Equitable Subordination Action shall be deemed dismissed with prejudice without further action of the parties thereto and all causes of action asserted therein (by all parties thereto) shall be released and extinguished.

43. Except for the payments contemplated by Article 9.4 of the Plan and the duties and obligations set forth in the JWC Stock Purchase Agreement, the Tax Cooperation and Indemnification Agreement and the Claims Agreement, neither the Plan Proponents, the Asbestos Property Damage Claimants Committee, Reorganized Celotex, Reorganized Carey Canada or their respective officers, directors, stockholders, members, representatives, attorneys, accountants, financial advisors and agents, nor the Consolidated Affiliates, shall have any liability to any of the Jasper Parties or the Drummond Interests.

### 9. Exoneration

44. Except as otherwise expressly provided in the Plan, none of the Released Parties shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the negotiation, formulation, preparation, dissemination, prosecution, confirmation, consummation, discussion, implementation or administration of the Plan, the Disclosure Statement, any contract, release, or other agreement or document created or entered into, the property to be distributed under the Plan, or any other action taken or omitted to be taken in connection with the Reorganization Cases or the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

45. The Plan Proponents and the Asbestos Property Damage Claimants Committee and each of their respective employees, agents, and professionals, and all other Entities that participated in the formulation, negotiation, solicitation, approval, and confirmation of the Plan shall be and hereby are entitled to the rights, benefits and protections of Sections 1125(d) and 1125(e) of the Bankruptcy Code.

46. The Plan Proponents shall not be liable, on account of any solicitation of acceptances of the Plan, or participation in good faith and in compliance with the applicable provisions of Title 11, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase

of securities pursuant to the express terms of Section 1125(e) of the Bankruptcy Code.

47. The Plan Proponents, the Asbestos Property Damage Claimants Committee, Reorganized Celotex, Reorganized Carey Canada, the designated representative (as defined in Section 7.1 of the Settlement Agreement) and the Veil Piercing Claimants' Representative (as defined in the VPSA) and their respective stockholders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors and representatives shall not be liable other than for willful misconduct or gross negligence to any holder of a Claim or Interest or any other Entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtors, Reorganized Celotex, or Reorganized Carey Canada, or the discharge of their duties under the Bankruptcy Code, (b) the implementation of any of the transactions provided for, or contemplated in, the Plan, (c) any action taken in connection with either the enforcement of the Debtors' rights against any Entities or the defense of Claims asserted against the Debtors with regard to the Reorganization Cases, (d) any action taken in the negotiation, formulation, development, proposal or implementation of the Plan or any previous plan proposed or filed in these Reorganization Cases, (e) any action taken in connection with the Debtors', or as successor to the Debtors, the Trust's, rights against Dana, including, without limitation, the provision of information to parties concerning Dana, Smith and Kanzler Company a/k/a Smith & Kanzler Company, Smith and Kanzler Corporation a/k/a Smith & Kanzler Corporation, Panacon Corporation or the Debtors' claims against Dana or the assignment of the S & K Claims (as defined in the Asbestos Property Damage Claims Resolution Procedures) in connection with any proceeding or action relating to the Reorganization Cases or as provided in the Plan or the Plan Documents or (f) the administration of the Plan or the Trust or the assets and property to be distributed pursuant to the Plan.

48. On the Effective Date, the Official Committees shall be dissolved and the members thereof released and discharged of and from all further authority, duties, responsibilities, liabilities and obligations related to or arising from the Reorganization Cases. On the Effective Date, all agents, employees, attorneys, accountants, financial advisors and representatives of the Official Committees shall be released and discharged of and from all further duties, responsibilities, liabilities and obligations related to or arising from the Reorganization Cases.

## 10. General Provisions

49. The satisfaction, release and discharge and the injunctions (including, but not limited to, the Injunctions) set forth herein shall not serve to satisfy, discharge, release or enjoin claims by the Trust, Reorganized Celotex, Reorganized Carey Canada, or any other Entity, as the case may be, against (a)(1) Dana (including, but not limited to, the Dana Liabilities) or (2) Rapid–American, to the extent any such party has not executed and performed under a Predecessor Settlement Agreement, (b) the Trust for payment of Asbestos Claims in accordance with the Asbestos Claims Resolution Procedures, (c) the Trust for the payment of Trust Expenses or (d) any Asbestos Insurance Company that has not executed and performed under an Asbestos Insurance Settlement Agreement, unless expressly stated herein.

50. Except as otherwise expressly provided in the Plan, the Plan Proponents, Reorganized Celotex, and Reorganized Carey Canada do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify creditors or otherwise have any responsibilities for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Confirmation Date. Except as otherwise expressly provided in the Plan or herein, neither the Plan Proponents, Reorganized Celotex, Reorganized Carey Canada nor the Trust is, or shall be, a successor to any of the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character,

except that Reorganized Celotex, Reorganized Carey Canada and the Trust shall assume the obligations specified in the Plan and this Order, and that the Trust may perform its indemnification obligations to Allied, Travelers and Aetna under the Allied Settlement Agreement (as defined herein) should such indemnification be required.

### D. *JWC Acquisition*

51. If, by the Effective Date, the Bankruptcy Court has not ordered that the Rule 3020 deposit made by Jasper in contemplation of the Debtors' previous plan of reorganization be returned to Jasper, but instead has ordered or otherwise allowed such deposit to remit to the Debtors' Estates or to the Trust, then, in addition to the payment described in Article 9.4(c) of the Plan, Jasper shall be paid such deposit and any interest on such deposit that has been remitted to the Debtors' Estates or to the Trust.

### E. *Environmental Claims*

52. The releases and injunctions set forth herein and in Article 10 of the Plan shall not impair the rights or causes of action of the United States of America (the "United States") against nondebtor parties under applicable Environmental Laws, and such rights and causes of action shall not be discharged or otherwise adversely affected by the Plan or this Order.

53. Nothing in the Plan or this Order shall be construed as releasing or relieving any Entity of liability under any Environmental Law as the owner or operator of property owned or operated by such Entity after the date of entry of this Order, including, without limitation, (a) an Entity's liability pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*, with respect to the site known as the 2800 S. Sacramento Avenue Site, Chicago, Illinois, more particularly described in the Administrative Order by Consent Pursuant to Section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9606(a) lodged by the United States Environmental Protection Agency (the "EPA"), Region V, Docket no. V–W–(97)–C–368 and (b) an Entity's liability with respect to the Celotex fiberboard plant in Sunbury, Pennsylvania pursuant to the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*

54. The Administrative Claims Bar Date described in Section 13.2 of the Plan shall not apply to any liability or obligation of the Debtors to the United States pursuant to any applicable Environmental Law. The United States may seek to enforce its rights against the Debtors in connection with alleged post-petition violations of any Environmental Law or any acts giving rise to alleged post-petition liabilities under any Environmental Law by the Debtors arising subsequent to the Petition Date in any court or agency of competent jurisdiction and such liability shall not be discharged by the Plan or this Order.

55. The Debtors' obligation to comply with the terms of the consent decree previously approved by the Bankruptcy Court between the Debtors and the United States in the matter styled, *United States v. Iacavazi,* any other consent decrees or consent orders entered by the Debtors and the United States on behalf of the EPA or the EPA directly, and the Order Authorizing Debtors to, Among Other Things, Compromise and Settle Disputed Environmental Claims Filed by the United States of America on Behalf of the United States Environmental Protection Agency, shall not be discharged or otherwise adversely affected by the Plan or this Order.

56. The liabilities and obligations of Celotex to Missouri Pacific Railroad Company ("Missouri Pacific") and to the State of Texas (to the extent any such liabilities or obligations exist) with respect to certain real estate located in San Antonio, Texas and described in that certain Settlement Agreement among Celotex, Missouri Pacific, and the State of Texas approved by order of the Bankruptcy Court dated June 7, 1996 (the "Missouri Pacific Settlement Agreement") arising under applicable Environmental Law or under the Prepetition Lease or the Postpetition Lease (as defined in the Missouri Pacific Settlement Agreement), shall be governed in accordance with the Missouri Pacific

Settlement Agreement and the order approving the same.

### F. *Tax Claims*

57. Unless a taxing authority has asserted a Claim against the Debtors before the bar date established therefor, no Claim of such authority shall be Allowed against the Debtors, Reorganized Celotex or Reorganized Carey Canada for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtors, the Consolidated Affiliates, the Jasper Parties or any other Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

58. Prior to the Effective Date, JWC is enjoined from claiming a worthless stock loss for the outstanding preferred and common stock of Celotex, and the provisions of IRC § 382(g)(4)(D) are not applicable to Celotex.

### G. *Executory Contracts*

59. Any unexpired lease or executory contract that has not been expressly assumed by the Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtors unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such unexpired lease or executory contract.

60. Notwithstanding anything to the contrary set forth in Article 6.1 of the Plan, pursuant to Section 365 of the Bankruptcy Code, the rejection of the following executory contracts and unexpired leases is hereby approved: (a) all product warranties of the Debtors (including any obligation of the Debtors to pay any costs or expenses related to such product warranties) which relate to asbestos or asbestos-related products that were made, mined, manufactured, produced, distributed, sold, marketed or supplied by the Debtors, whether or not the liabilities or obligations resulting thereunder constitute or will be treated as Asbestos Claims pursuant

to the Plan; and (b) all product warranties of the Debtors (including any obligation to pay any costs or expenses related to such warranties), which relate to products no longer made, mined, manufactured, produced, distributed, sold, marketed or supplied by the Debtors.

61. The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Entity seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Entity must file a Proof of Claim with the Bankruptcy Court before thirty calendar days following the Confirmation Date. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as, a Celotex Class 4 Claim or Carey Canada Class 4 Claim, or if the Claim is an Asbestos Claim, a Celotex Class 6 Claim, a Carey Canada Class 6 Claim, a Celotex Class 8 Claim or a Carey Canada Class 8 Claim, as the case may be, and the holder thereof shall receive distributions as a holder of an Allowed Claim in such Class or Classes pursuant to the Plan. The Plan shall constitute notice to Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of this bar date for filing a Proof of Claim in connection therewith. The Plan Proponents shall have no obligation to notify such Entities that Confirmation has occurred.

62. Notwithstanding subpart (a) of Article 6.1 of the Plan, the Debtors shall assume those executory contracts and unexpired leases listed on Exhibit 2 of the Plan (as such list was amended or supplemented up to and including the Confirmation Date), and the Debtors shall likewise assume any unexpired lease or executory contract the Debtors entered into after the Petition Date to the extent such contract or lease is executory or unexpired, respectively, under Section 365 of the Bankruptcy Code.

63. Any obligations of the Debtors, pursuant to their respective corporate charters, letters patent and bylaws, or pursuant to law, to indemnify their respective directors, offi-

cers, agents, employees, attorneys, accountants, financial advisors and representatives, with respect to all present and future actions, suits and proceedings against the Debtors or any of such officers, directors, agents, employees, attorneys, accountants, financial advisors or representatives, based upon any act or omission related to service with, or for or on behalf of, the Debtors, shall not be discharged or impaired by Confirmation of the Plan, but shall be deemed and treated as executory contracts that are assumed by the applicable Debtor pursuant to the Plan and Section 365 of the Bankruptcy Code, except to the extent any such obligation has been released pursuant to the Plan. Accordingly, such indemnification obligations shall survive unaffected by the Plan and shall be performed and honored by Reorganized Celotex and Reorganized Carey Canada.

### H. *Administrative Claims Bar Date*

64. The Administrative Claims Bar Date shall be the first Business Day after sixty days after the Effective Date or such other date as the Bankruptcy Court may order. Claimants holding Administrative Claims against the Debtors not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth such date and constitute notice of the Administrative Claims Bar Date. The Plan Proponents and any other party in interest shall have ninety days after the Administrative Claims Bar Date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court, provided that such ninety day period of review may be extended by the Bankruptcy Court upon the request of any of the Plan Proponents.

### I. *Corporate Governance; Compensation*

65. This Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other documents, instruments or agreements, and any amendments or modifications thereto, any other acts referred to in or contemplated by the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

66. The Compensation Programs and other compensation arrangements for Reorganized Celotex's and Reorganized Carey Canada's key executives and employees as contemplated to exist at the Plan's Effective Date and the aggregate compensation afforded thereby (including salaries, annual incentive compensation, retention awards, long-term compensation, other compensation arrangements and the executive employment and severance agreements) shall be implemented by Reorganized Celotex on the Effective Date and shall be binding and effective for all purposes. Nothing in the Plan shall be construed to modify, supersede or reject any Employee Benefit Plan, all of which shall remain in full force and effect following Confirmation.

67. The consummation of the Plan shall not constitute a change of ownership or change in control, as such terms are used in any employment, severance or termination agreement in effect on the Effective Date and to which either of the Debtors is a party or under any applicable law of any applicable Governmental Unit.

### J. *Jurisdiction*

68. Until the Reorganization Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out. Except as otherwise expressly provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtors, and to adjudicate and enforce the Asbestos Insurance Actions, the Supersedeas Bond Actions, and all other causes of action which may exist by or on behalf of the Debtors.

69. Following Confirmation of the Plan, the administration of the Reorganization Cases will continue at least until the completion of the transfers contemplated to be

accomplished on the Effective Date. Moreover, the Trust shall be subject to the continuing jurisdiction of the Bankruptcy Court in accordance with the requirements of Section 468B of the IRC and the regulations issued pursuant thereto. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claim and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claim. The failure by the Plan Proponents to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the right of the Debtors, Reorganized Carey Canada, Reorganized Celotex or the Trust, as the case may be, to object to or re-examine such Claim in whole or part.

70. In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after Confirmation of the Plan:

(a) to modify the Plan after Confirmation, pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

(b) to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Trust Documents (in the case of PD Amendments, with the consent or upon the motion of the Property Damage Claims Administrator) or this Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(c) to assure the performance by the Disbursing Agent and the Trust of their respective obligations to make distributions under the Plan;

(d) to enforce and interpret the terms and conditions of the Plan, the Plan Documents, and the Trust Documents;

(e) to enter such orders or judgments, including, but not limited to, (i) injunctions as are necessary to enforce the title, rights and powers of the Debtors, Reorganized Celotex, Reorganized Carey Canada and the Trust and as are necessary to enable holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise, including, but not limited to, orders of the Court and (ii) confirming the allowance of Asbestos Claims by the Trust or the PDCA, as applicable;

(f) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors, Reorganized Celotex, Reorganized Carey Canada or the Trust arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Reorganization Cases;

(g) to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code filed prior to the Effective Date and all requests for increases in the compensation of and bonuses to the PD Advisory Committee, the Trust Advisory Committee, the Property Damage Claims Administrator; the Legal Representative, and Trustees;

(h) to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, Reorganized Celotex, Reorganized Carey Canada, the Trust, the Trustees, the Official Committees or the Legal Representative and their respective officers, directors, stockholders, employees, members, attorneys, accountants, financial advisors, representatives and agents;

(i) to determine any and all motions pending as of Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(j) to determine such other matters and for such other purposes as may be provided in this Order;

(k) to consider and act on the compromise and settlement of any Claim against or Interest in the Debtors or their Estates;

(*l*) to determine all questions and disputes regarding title to the assets of the Debtors or their Estates or the Trust;

(m) to hear and determine the Asbestos Insurance Actions and the Supersedeas Bond Actions, to construe and take any action to enforce any Asbestos Insurance Settlement Agreement or settlement of any Supersedeas Bond Action and the releases executed and exchanged in connection therewith, and to issue such orders as may be necessary for the execution, consummation and implementation of any Asbestos Insurance Settlement Agreement or settlement of any Supersedeas Bond Action, and to determine all questions and issues arising under or with respect to any Asbestos Insurance Settlement Agreement or settlement of any Supersedeas Bond Action;

(n) to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in these Reorganization Cases;

(o) to retain continuing jurisdiction with regard to the Trust sufficient to satisfy the requirements of Treas.Reg. Section 1.468B–1(c)(1); and

(p) to enter such orders as are necessary to implement and enforce the Injunctions and the other injunctions described herein.

## K. *Miscellaneous*

71. The contested Administrative Claim of Glenn Hasenauer shall be paid, if and when Allowed, within ten days after a Final Order allowing such Claim, without regard to the Distribution Date set forth in the Plan.

72. The settlement agreement among the Debtors, JWC, Allied, Aetna and Travelers dated December 4, 1996 (the "Allied Settlement Agreement") shall constitute a Predecessor Settlement Agreement and an Asbestos Insurance Settlement Agreement. The releases and waivers of claims contained therein are hereby approved.

73. Any injunction or other protection afforded to JWC shall not be applicable to any claim by Aetna against JWC for the payment of retrospective premium and/or deductible obligations arising out of a payment by Aetna under the Policies (as defined in the Settlement Agreement and Mutual Release by and between Aetna and the Debtors dated as of November 22, 1996) with respect to a claim against JWC, and Aetna shall not be able to assert a claim against JWC for the payment of retrospective premium and/or deductible obligations arising out of a payment by Aetna under the Policies with respect to a claim against an insured under the Policies other than JWC.

74. Except as otherwise expressly provided in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be Allowed on any Claim or Interest.

75. No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Interest except as Allowed by a Final Order of the Bankruptcy Court.

76. To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

77. Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtors or the Trust, as applicable, may, but shall not be required to, setoff against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such holder.

78. Notwithstanding anything to the contrary in the Plan or this Order, the Court has not ruled on, nor otherwise interpreted, the Dana Indemnification Rights.

79. In the event of a conflict between the terms or provisions of the Plan and the Plan

Documents, the terms of the Plan shall control the Plan Documents.

80. Confirmation of the Plan, the Trust, or this Order will not affect any finding, ruling or opinion of the Bankruptcy Court in any adversary proceeding concerning the Debtors' rights to or coverage under one or more insurance policies or rights against any insurance company or other insurer or indemnitor.

81. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

82. In accordance with the Procedural Order, this Order shall be final for appeal purposes in accordance with Bankruptcy Rules 8001 through 8019, but effectiveness of this Order is stayed until such time as this Order has been issued and entered by the District Court and noted on the docket of the District Court; provided, however, that the automatic stay arising under 11 U.S.C. § 362 and all injunctions entered by the Bankruptcy Court prior to Confirmation shall remain in full force and effect until the Effective Date. Moreover, in accordance with the Procedural Order, upon entry of this Order by the Bankruptcy Court, a motion for leave to appeal pursuant to Bankruptcy Rules 8001 and 8003 is deemed granted by the District Court in favor of all parties in interest that have filed and prosecuted objections to Confirmation of the Plan.

83. Unless this Order is stayed pending appeal, its reversal or modification shall not affect the validity of the Plan, the Plan Documents, or any other agreement, document, instrument or action authorized by this Order or under the Plan as to the Debtors, Reorganized Celotex, Reorganized Carey Canada, the Trust, or any other Entity acting in good faith, whether or not that Entity knows of the appeal.

84. Nothing herein shall alter or adversely affect Celotex's status as a self-insurer with respect of workers' compensation claims in Alabama, Florida, Illinois, Iowa, Kentucky, Louisiana, Michigan, Pennsylvania or Tennessee, or in any other state in which Celotex is a self-insurer with respect to workers' compensation claims or the procedures in place in such states with respect to the processing of workers' compensation claims.

## L. *Notice*

85. Counsel for the Debtors shall serve forthwith copies of this Order, as entered by the Bankruptcy Court, on the Confirmation Service List established pursuant to prior orders of the Bankruptcy Court and file a Certificate of Compliance with the Clerk of the Bankruptcy Court.

86. The Debtors shall serve any notice of the entry of any Order by the District Court related to this Order Confirming the Plan upon all holders of Claims or Interests and on such other parties in interest who were served with notice of the Confirmation Hearing no later than fourteen days after entry of this Order on the docket of the District Court, which shall constitute notice to such Entities of all matters and deadlines set forth herein, including notice of the last day for filing Administrative Claims, claims arising from the rejection of executory contracts, and applications for allowances of compensation and/or reimbursement of expenses, pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c).

87. The Debtors shall publish a Confirmation Notice once, in substantially the same method used to publish notice of the General Claims Bar Date no later than fourteen days after the entry of this Order on the docket of the District Court.